Baker *v.* Parsons.

JOHN W. BAKER *vs.* KATHERINE C. PARSONS & another.[1]

Middlesex. April 2, 2001. - July 12, 2001.

Present (Sitting at Northampton): MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*"Anti-SLAPP" Statute. Constitutional Law,* Right to petition government. *Statute,* Construction. *Practice, Civil,* Summary judgment.

General Laws c. 231, § 59H, the anti-SLAPP statute, was applicable to a case in which a biologist responded to inquiries from State and Federal environmental officials, in connection with government agency reviews of a property owner's application to develop his property by constructing a pier on an island that had historically been a home for aquatic birds, as a result of which the property owner eventually sued the biologist and the nonprofit organization for which she worked, thus, according to the defendant, "chilling" any further participation by the defendants in assisting the government agencies gathering information on the merits of the property owner's application. [548-550]

There was no abuse of discretion or other error of law in a judge's decision to grant the defendants' special motion to dismiss, pursuant to G. L. c. 231, § 59H, the anti-SLAPP statute, a lawsuit by the plaintiff property owner alleging that the defendants had tortiously interfered with his application to construct a pier on his property where, once the defendants established through pleadings and affidavits that the claims against them were based on petitioning activities and had no substantial basis other than or in addition to those activities, the plaintiff could not have shown by a preponderance of the evidence that the defendants lacked any reasonable factual support for their petitioning activities. [550-555]

CIVIL ACTION commenced in the Superior Court Department on June 3, 1993.

The case was heard by *Barbara J. Rouse,* J., on a special motion to dismiss.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert H. D'Auria* for the plaintiff.

*Jacqueline L. Allen* for the defendants.

[1]Manomet Bird Observatory.

The following submitted briefs for amici curiae:

*Thomas F. Reilly*, Attorney General & *Dorothy Anderson*, Assistant Attorney General, for the Commonwealth.

*Patricia A. DeJuneas & Sarah R. Wunsch* for the American Civil Liberties Union of Massachusetts.

CORDY, J. The plaintiff, a property owner in Plymouth, appeals from the decision of a Superior Court judge granting the defendants' special motion to dismiss his lawsuit, pursuant to G. L. c. 231, § 59H, commonly known as the anti-SLAPP statute.[2] He argues that his complaint is not subject to a special motion to dismiss because it was not based solely on the defendants' petitioning activities, and, in the alternative, that he met his burden under the statute to show that the defendants' activities were devoid of any reasonable factual support or any arguable basis in law. The parties disagree on the standard to be used to determine whether this burden has been met. We transferred the case to this court on our own motion. We conclude that to defeat a special motion to dismiss made pursuant to G. L. c. 231, § 59H, the nonmoving party (the plaintiff here) must show by a preponderance of the evidence that the moving party's petitioning activities were devoid of any reasonable factual support or any arguable basis in law. Because this standard was not met in the present case, we affirm the decision allowing the defendants' special motion to dismiss.

1. *Background.* Between 1979 and 1991, John W. Baker (Baker) purchased various parcels of land on the northern end of Clark's Island in Plymouth. In 1987, he placed a portion of his acreage in a forestry trust on which he has since operated a tree farm. The defendants, Manomet Bird Observatory[3] and Dr. Katherine C. Parsons, now a senior staff scientist for Manomet, studied bird populations on the island from 1975 to 1989. Manomet had once owned land on the island that was ultimately

---

[2]"The acronym 'SLAPP' (Strategic Lawsuit Against Public Participation) was coined by George W. Pring and Penelope Canan. See Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envtl. L. Rev. 3, 4 (1989)." *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. 156, 160 n.7 (1998) (*Duracraft*).

[3]Apparently, the correct name for Manomet is Manomet Observatory, Inc. It is a nonprofit organization that conducts environmental research on bird populations and habitats.

purchased by Baker. Baker allowed Parsons and Manomet to continue using his property for research purposes until he learned that they were seeking to have the island classified as an "area of critical environmental concern," which Baker believed would severely restrict his use of his land. He alleges that his decision to deny access to his property to the defendants "resulted in a smear campaign" by them against him.

In 1991, Baker applied for a license from the Massachusetts Department of Environmental Protection, and for a Federal permit from the United States Army Corps of Engineers (Army corps), to construct a pier on the northern end of his property.[4] In response to his application, the Army corps solicited comment from various agencies including the natural heritage and endangered species program (natural heritage program), a division of the Massachusetts division of fisheries and wildlife, which has as one of its purposes the review of Army corps permit applications. In reviewing the application, Jay Copeland, an environmental reviewer for the natural heritage program, solicited comments from Parsons.[5]

The parties disagree about the type of information Parsons was asked to provide. According to Baker, Parsons was asked only to furnish information about the "habitat value" of the north end of Clark's Island; she was not asked to comment on his tree farming operations or on the effect that the proposed pier might have on the habitat. Parsons counters that she was asked to provide information about the island habitat generally so that the natural heritage program would have some context in which to evaluate the pier permit application.

On October 23, 1991, Parsons wrote a letter to Copeland that included the following statements:

> "In sum, the Clark's Island site provided unique and rare nesting habitat to several species of colonial birds

---

[4]Baker sought the pier permit in order "to transport materials and trees necessary for [his] [f]orestry [tree farming] activities." The United States Army Corps of Engineers eventually issued the pier permit, and the pier has now been built. See *Baker* v. *Coxe*, 52 F. Supp. 2d 244, 248 (D. Mass. 1999), aff'd, 230 F.3d 470 (2000), cert. denied, 532 U.S. 995 (2001).

[5]According to the agency's records, Parsons had conducted research and supplied information in the past concerning bird populations on the island.

until 1986 when the site changed hands and no longer
benefited from protective ownership. The present owner's
activities in the heronry clearly have diminished and
perhaps decimated a once robust and viable heronry.

"The significance of the site and its value to the state's
avifauna cannot be overestimated. Located within a
sheltered harbor within easy commute of extensive
marshes to the north and south, Clark's Island provides a
predator-free habitat not easily replaced.

"Habitat loss is the primary cause of loss in biodiver-
sity at virtually any scale examined. *It is my fervent hope
that the state and federal agencies charged with protecting
the region's natural resources will act to halt the continued
degradation of this important site and restore Clark's
Island to the prominence it held only recently in providing
nesting habitat to aquatic birds.* Thank you for this op-
portunity to comment." (Emphasis added.)

Baker characterizes this letter as containing "defamatory allega-
tions . . . known by Parsons to be false and devoid of any
reasonable factual support," and alleges that these statements
caused ten citizens to petition the Executive Office of Environ-
mental Affairs to require an environmental impact review of the
proposed pier construction.[6]

Last, Baker asserts that Parsons, when contacted in 1991 by
Christopher Dowd, an officer with the United States Fish and
Wildlife Service, falsely accused Baker of destroying heron
nests on Memorial Day in 1989,[7] by cutting his grass with a
"brush hog," so that Baker would be criminally prosecuted for

---

[6]The ten taxpayer petition was not signed by Parsons or Manomet. As a
result of the petition, filed pursuant to 301 Code Mass. Regs. § 11.03(6)
(1998), the State was obligated to require Baker to file an environmental
notification form. The Massachusetts Executive Office of Environmental Af-
fairs did so, and the form was submitted by Baker in June, 1993. In August,
1993, after collecting public comments, the executive office required the filing
of an environmental impact report. Baker challenged the executive office's
decision pursuant to G. L. c. 30. In December, 1994, a Superior Court judge
ruled that the report required by the executive office was overbroad, and must
be narrowed to the subject matter of the pier permit. Baker *vs.* Coxe, Suffolk
Superior Court, No. 93-5795C (Dec. 22, 1994).

[7]Parsons responded to an inquiry from Christopher Dowd of the United
States Fish and Wildlife Service in the fall of 1991, stating that she had

violating the Migratory Bird Treaty Act (MBTA), see 16 U.S.C. §§ 703-712 (2000), and so that his pier permit application would be denied. Parsons responds that State officials, believing that Federal laws might have been violated, initially reported the matter to Dowd, thus prompting his contact with Parsons.

2. *Procedural history.* In June, 1993, Baker brought various claims against the defendants, including a claim for tortious interference with his pier permit application.[8] The defendants unsuccessfully sought summary judgment, asserting that the protection provided by the First Amendment to the United States Constitution to their petitioning activities immunized them from civil liability for injuries alleged by the plaintiff.

While the case was pending, the anti-SLAPP suit statute was enacted by the Legislature and made applicable to pending cases.[9] The defendants then filed a special motion to dismiss, asserting that Baker could not establish that Parsons's actions in providing information to governmental agencies in connection with Baker's pier permit application "were without any basis in fact or law," or that Baker had suffered any actual damages resulting from the defendants' petitioning activity. A judge in

witnessed someone on the plaintiff's property more than two years earlier using a tractor with a mowing attachment in the vicinity of a gull nesting area, and that immediately thereafter she saw demolished gull nests, broken eggs, and dead gull chicks in the area. Dowd stated in an affidavit that he also examined other "credible witnesses who had noticed that gull nests had been destroyed during the Memorial Day Weekend of 1989." In opposing the defendants' special motion to dismiss, Baker denied in his affidavit that he or anyone else had mown in that area on or about the date alleged, and denied that any nests, eggs, or chicks had ever been destroyed by mowing. The resolution of such factual disputes, based on the conflicting pleadings and affidavits submitted on a special motion to dismiss, is for the motion judge, to be decided in accordance with the standards we set forth below.

[8]Baker's amended complaint also alleged intentional infliction of emotional distress, slander, libel, and violation of his civil rights. He claimed damages consisting of a delay in the issuance of the pier permit resulting in "thousands of dollars in legal fees and lost income, emotional distress, and physical injuries." In their answer, the defendants asserted counterclaims against Baker alleging abuse of process, a violation of G. L. c. 93A, intentional infliction of emotional distress, civil rights violations, defamation, and a violation of deed restrictions and reservations permitting Manomet limited annual visits to Baker's property to observe and record bird nesting.

[9]General Laws c. 231, § 59H, inserted by St. 1994, c. 283, § 1, and made applicable to pending cases by St. 1994, c. 283, § 2, became effective on March 15, 1995.

the Superior Court allowed the motion, concluding that Parsons's statements constituted petitioning activity under the statute, and that Baker "failed to show that Parsons's alleged petitioning activity was devoid of any reasonable factual support or any arguable basis in law." In addition, the judge concluded that Baker failed to show that the defendants' actions caused him real injury. After the defendants' counterclaims were voluntarily dismissed, final judgment entered, dismissing Baker's complaint. Baker took an appeal from the allowance of the special motion to dismiss. We transferred the case here on our own initiative.[10]

3. *The amenability of this action to the statute.* Because the special motion to dismiss was granted in January, 1996, the judge did not have the benefit of our recent decisions addressing various challenges to the anti-SLAPP statute. G. L. c. 231, § 59H. Baker argues that a review of these decisions, *McLarnon* v. *Jokisch*, 431 Mass. 343 (2000) (*McLarnon*), and *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. 156, 160 (1998) (*Duracraft*), makes it clear that the Superior Court erred in allowing the defendants' special motion to dismiss, because his claims against the defendants contain none of the indicia of a "typical" SLAPP suit. We do not agree.

In essence Baker maintains that because he is not a "developer," but just "an individual operating an environmentally friendly tree farm," while the defendant Manomet is a "wealthy and politically well-connected environmental organization," his lawsuit is not one to which the anti-SLAPP suit procedures of G. L. c. 231, § 59H, apply. Even if we were to accept these characterizations of the parties as true, this would not, without

---

[10]We acknowledge the amicus briefs filed by the Attorney General on behalf of the Commonwealth, and by the American Civil Liberties Union of Massachusetts. General Laws c. 231, § 59H, permits the Attorney General to "intervene to defend or otherwise support the moving party on such special motion." The office of the Attorney General chose to file a brief in this case because (1) of its concern that "[t]he transmission of information vital to the functioning of every branch of government [would be] threatened if the provision of such information [as occurred in this case] by a citizen exposes him or her to the threat of a protracted lawsuit," and (2) "this case presents the [c]ourt with one of its first opportunities to specifically interpret critical language of section 59H pertaining to the burden on a party opposing a special motion."

more, foreclose a special motion to dismiss pursuant to the statute. In *Duracraft* we noted that the "typical mischief that the legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects." *Id.* at 161. But our review of the legislative history of the statute also led us to conclude that the Legislature intended to go beyond the "typical" case by enacting "very broad protection for petitioning activities." *Id.* at 162.

In addition to its legislative history, the plain language of the statute, which is not limited in the manner suggested by Baker, squarely encompasses the facts of this case. Parsons, a biologist, responded to inquiries from State and Federal environmental officials, in connection with government agency reviews of Baker's application to develop property by constructing a pier on an island that has historically been a home for many aquatic birds. As a result of her responses, Baker eventually sued Parsons and the nonprofit organization for which she works,[11] thus, according to the defendants, "chilling" any further participation by the defendants in assisting State and Federal agencies gathering information on the merits of Baker's application.[12]

Baker's claim that the judge should have denied the special motion to dismiss because allowing the motion interfered with his "littoral right to place a pier on his property and/or operate a tree farm . . . a right secured" under the State and Federal Constitutions, is without merit. That Baker had to comply with certain environmental regulations and review processes in order

[11]The fact that Baker did not immediately sue the defendants matters not as he eventually did sue them, and apparently threatened litigation while government agency requests for information from the defendants were still pending.

[12]Seen in this light, Baker's actions do in fact present a "typical" SLAPP suit, which often targets individuals for "reporting violations of law, writing to government officials, attending public hearings, testifying before government bodies, . . . [and] filing agency protests or appeals." *Duracraft, supra* at 161-162, quoting G. Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envtl. L. Rev. 3, 5 (1989). "[SLAPP suits] are a response by detrimentally affected parties to the activities of citizens who petition the government. SLAPPs are intended to silence those citizens. In doing so, SLAPPs effectively deny vocal citizens their constitutional right to petition the government." (Footnotes omitted.) Comment, Strategic Lawsuits Against Public Participation: An Analysis of the Solutions, 27 Cal. W. L. Rev. 399, 399-400 (1991).

to develop his property does not deprive him of any constitutionally protected property rights. See *Fragopoulos* v. *Rent Control Bd. of Cambridge,* 408 Mass. 302, 307 (1990), citing *Moskow* v. *Commissioner of Envtl. Mgt.,* 384 Mass. 530, 532 (1981) ("Consistent with the Constitution, the Commonwealth and its subdivisions may regulate private property in the public interest"); *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 851 (1977), citing *Durgin* v. *Minot,* 203 Mass. 26, 28 (1909) ("the enjoyment of private property may be subordinated to reasonable regulations that are essential to the peace, safety, and welfare of the community"). General Laws c. 231, § 59H, was properly applied to Baker's claims against the defendants.

4. *The special motion to dismiss.* We review the judge's decision granting the special motion to dismiss to determine whether there was an abuse of discretion or other error of law. *McLarnon, supra* at 348.

In our first review of G. L. c. 231, § 59H, we noted: "By protecting one party's exercise of its right of petition . . . the statute impinges on the adverse party's exercise of its right to petition . . . ." *Duracraft, supra* at 166. In order to safeguard the rights of all parties, we required the special movant seeking the protection of the anti-SLAPP statute "to make a threshold showing through the pleadings and affidavits that the claims against it are 'based on' the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." *Id.* at 167-168.

Although she ruled before our decision in *Duracraft,* the motion judge evaluated the motion in a manner that demonstrates it met the threshold requirement set forth in that case. The judge writes:

> "It is clear that the defendants have been sued for petitioning activity within the scope of the statute. The majority of the statements about which Baker complains are contained in a letter Parsons wrote to Copeland after he telephoned her and asked if she would provide him with some information concerning the 'habitat value of the north end of Clark's Island to aquatic bird species nesting there.' Parsons also talked to [Dowd], an officer of the

United States Fish and Wildlife Service who asked to talk to her about the destruction of gull nests on Clark's Island. Dowd contacted Parsons after Copeland had informed him about Parsons' discovery of destroyed nests. *Parsons' communications with Copeland and Dowd fall squarely within the definition of petitioning activity as defined by the statute because they pertained to consideration by governmental agencies of Baker's application to construct a pier*" (emphasis added).

This initial showing by the defendants that the claims against them were based on their petitioning activities alone is not defeated by the plaintiff's conclusory assertion that "certain statements made by the [d]efendants [in petitions to government officials] constitute defamation." See Barker, Common-law and Statutory Solutions to the Problem of SLAPPS, 26 Loy. L.A. L. Rev. 395, 402 (1993) (defamation most popular SLAPP cause of action). Baker argues that the "libellous" statements of Parsons in her letter to Copeland were all directed at his tree farming activities on Clark's Island, and his tree farming activities were never under review by the natural heritage program. But, according to Copeland, Parsons was not asked to comment simply on the habitat value of the island, but to give "her impressions . . . about the effect of the activities on the site."[13]

Once the defendants established through pleadings and affidavits that the claims against them were based on petitioning activities and had no substantial basis other than or in addition to those activities, the burden shifted to the nonmoving party to

---

[13]Baker also claims that Parsons's statements to Dowd, a Federal official, regarding the destruction of gulls and gull nests on the island, were "not even remotely connected" with Baker's pier application, and therefore cannot be considered petitioning. Baker, however, sought a pier permit admittedly in connection with his tree farming activities, and Copeland, as explained above, solicited information from Parsons concerning Baker's activities on the island as they related to the decline of the birds, and then passed that information on to Dowd, who then contacted Parsons.

Also, the judge correctly concluded that even if Parsons had made statements or taken actions to cause ten citizens to write to a State agency to petition for environmental review of Baker's pier proposal, as Baker alleges, such statements or actions would have constituted legitimate petitioning activity. Parsons's allegedly "false statements" to the citizens would have constituted "statement[s] reasonably likely to enlist public participation in an effort to effect such consideration." G. L. c. 231, § 59H.

show (also by pleadings and affidavits) that "(1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party."[14] G. L. c. 231, § 59H. See *McLarnon, supra* at 348-349. The judge found that Baker failed to meet this burden, reasoning that Parsons, a biologist who had studied bird populations on Clark's Island for many years, and had observed a decline in bird populations following Baker's activities, was not without a factual basis in projecting that an escalation of activities associated with the construction and use of a pier on the north end of the island would adversely affect the bird population.[15]

Neither the Legislature nor this court in our cases interpreting the anti-SLAPP statute has indicated what evidentiary standard is to be applied by a judge in weighing conflicting factual allegations in order to determine whether a party has met its burden of showing that an opposing "party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law." G. L. c. 231, § 59H. The statute provides only that in making this determination, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based."[16] *Id.*

Baker asserts that a summary judgment standard should be employed in this context to decide competing factual allegations.

[14]Because we conclude below that the motion judge did not err as a matter of law in finding that the plaintiff failed to meet his burden on the first element, we need not reach the second, "actual injury" element.

[15]The judge further noted that neither Baker's allegations that other factors contributed to changes in the bird population, nor his contentions that Parsons wrongfully accused him of harming the bird habitat, would establish that Parsons's statements were without any factual basis.

[16]In *McLarnon* v. *Jokisch*, 431 Mass. 343, 349 (2000) (*McLarnon*), we held, without making reference to a specific evidentiary standard, that "despite conflicting affidavits, the judge could conclude that . . . the plaintiff failed to meet his burden of proving no reasonable factual support or basis in law for the defendants' petitioning activities." The judge's conclusion in that case, however, relied not just on conflicting affidavits, but on "several judges grant-[ing] or extend[ing] protective orders against the plaintiff over a period of more than three years." *Id. McLarnon* is not the typical case anticipated by the statute. See G. L. c. 231, § 59H.

He relies on *Duracraft*, in which we stated that the standard for summary judgment adopted in *Protect Our Mountain Env't, Inc.* v. *District Court*, 677 P.2d 1361, 1369 (Colo. 1984) (*POME*), would be "a likely source" of the standard for evaluating special motions to dismiss in the Massachusetts anti-SLAPP statute. *Duracraft, supra* at 165 n.16. As even our brief discussion in *Duracraft* of the *POME* decision makes clear, however, the Supreme Court of Colorado was discussing a "heightened" summary judgment standard, one requiring multiple considerations. See *POME, supra.* In contrast, the summary judgment standard that Baker offers would, if applied, essentially nullify the anti-SLAPP statute; it would be a rare case in which a plaintiff was unable to attest that something said by the petitioner was untrue or misleading. If Baker's reasoning is correct, the Legislature would have had no need to devise a "special" procedural mechanism in the first place.[17]

The defendants urge the adoption of a different standard: "[I]f despite the [opposition] party's submission, the court can find *any* factual or legal support for the petitioning activity, the motion 'shall be' allowed. [G. L. c.] 231, § 59H. The presumption is for dismissal, in contrast to a [rule] 12 (b) (6) motion where the presumption is for denial of the motion to dismiss." (Emphasis in defendants' brief.) The problem with setting forth a presumption for dismissal is the conundrum we addressed in *Duracraft, supra* at 166: by protecting one party's exercise of its right to petition, the statute impinges on the adverse party's exercise of its own right to petition.

In seeking, as we did in our *Duracraft* decision, to balance these competing interests, we conclude that the party opposing a special motion to dismiss is required to show by a preponderance of the evidence that the moving party lacked any reason-

---

[17]The Governor, in a message accompanying his veto of 1994 House Doc. No. 1520, which when enacted became G. L. c. 231, § 59H, had a very different understanding of the burden being placed on nonmovants: "The bill . . . sets up a special rule of law and a special procedure different than that in effect for any other type of litigation . . . [and] would not only shift the normal burden of proof, but erect a nearly insurmountable barrier to a suit." 1994 House Doc. No. 5604. In spite of the strong concerns expressed by the Governor, the Legislature overrode his veto and the anti-SLAPP statute became law. 1994 Senate J. 1491-1492; 1994 House J. 1306. See *Duracraft, supra* at 162.

able factual support or any arguable basis in law for its petitioning activity. This standard places the burden on the nonmoving party, as the Legislature intended, but without creating an insurmountable barrier to relief.[18,19] In the interests of judicial economy, and to prevent the defendants from being unnecessarily subjected to further litigation, we apply this standard to the case at bar, and conclude, for reasons already discussed above, that the plaintiff could not have shown by a preponder-

---

[18]The Attorney General in the amicus brief suggests the use of a clear and convincing evidence standard here. We note that in the absence of a statutory provision to the contrary, the preponderance of evidence standard is the standard generally applied in civil cases. See *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. 90, 101 (1998), and cases cited. This is due in part to a concern that the "clear and convincing" standard is too often applied like the more familiar, and more stringent, "beyond a reasonable doubt" standard. See *Medical Malpractice Joint Underwriting Ass'n of Mass.* v. *Commissioner of Ins.*, 395 Mass. 43, 47 (1985), and cases cited.

[19]The fourteen States (besides Massachusetts) that have enacted anti-SLAPP legislation vary greatly in the burden they place on nonmovants (plaintiffs in the litigation) who challenge a motion to dismiss a SLAPP suit. Those States include: California (plaintiff must establish probability of prevailing on claim; see Cal. Civ. Proc. Code § 425.16 [West 1995 & Supp. 2001]); Delaware (award of damages to plaintiff requires clear and convincing evidence; see Del. Code Ann. tit. 10, §§ 8136-8138 [1999]); Florida (summary judgment standard; see Fla. Stat. Ann. § 768.295 [Supp. 2001]); Georgia (plaintiff's opposition must be well grounded in fact and warranted by law; see Ga. Code Ann. § 9-11-11.1 [Supp. 2000]); Indiana (preponderance of evidence standard, with burden on movant; see Ind. Code Ann. §§ 34-7-7-1 — 34-7-7-10 [1998]); Louisiana (plaintiff must establish probability of success on claim; see La. Code Civ. Proc. Ann. art. 971 [West Supp. 2001]); Minnesota (clear and convincing evidence standard; see Minn. Stat. Ann. §§ 554.01-554.05 [West 1994]); Nebraska (award of damages to plaintiff requires clear and convincing evidence; see Neb. Rev. Stat. §§ 25-21,241-21,246 [1995]); Nevada (motion for summary judgment standard; see Nev. Rev. Stat. §§ 41.637, 41.650, 41.660, 41.670 [2000]); New York (must show petition without substantial basis in fact and law; see N.Y. Civ. Rights Law §§ 70-a, 76-a [McKinney Supp. 2001]; N.Y. Civ. Prac. L. & R. § 3211[g], 3212[h] [McKinney Supp. 2001]); Oklahoma (no clear standard; see Okla. Stat. Ann. tit. 12, § 1443.1 [1993]); Rhode Island (petition immune from suit unless subjectively and objectively baseless; see R.I. Gen. Laws §§ 9-33-1 — 9-33-4 [1997]); Tennessee (immunity from SLAPP suits unless petition knowingly or recklessly false; see Tenn. Code Ann. §§ 4-21-1001 — 4-21-1004 [1998]); Washington (interpreted by State Court of Appeals as clear and convincing evidence standard; see Wash. Rev. Code Ann. §§ 4.24.500 to 4.24.520 [Supp. 2001]; *Gilman* v. *MacDonald*, 74 Wash. App. 733, 738-739 [1994]).

ance of evidence that the defendants lacked any reasonable factual support for their petitioning activity.[20]

We conclude that there was no abuse of discretion or other error of law in the judge's decision to grant the defendants' special motion to dismiss pursuant to G. L. c. 231, § 59H.

*Judgment affirmed.*

---

[20]In affirming the judge's decision, we note with approval her conclusion regarding the burden necessary to show that the petitioning activities lacked any arguable basis in law: "It is not enough for Baker to show that Parsons' alleged petitioning activity, requesting broad environmental review, was based on an error of law; he must show that no reasonable person could conclude that there was [a basis in law] for requesting that review. Baker has not made this showing." This is a correct statement of the law. See *Donovan* v. *Gardner*, 50 Mass. App. Ct. 595, 600 (2000) (fact that legal challenges resolved in plaintiffs' favor does not mean no colorable basis existed for defendants' petitions).