Kane, J.
Scott M. Peterson and Eric M. Peterson, in their individual and representative capacities, claim Michael Eder, Gunhild Eder, Robert Goldman, Ann Goldman, and George Billings abused process (Count I), maliciously prosecuted claims (Count II), and intentionally or negligently inflicted emotional distress (Counts III and IV, respectively) “in connection with [defendants’ objections to development of] thirty-three acres of the Peterson Real Estate Trust.” Defendants now present a motion to dismiss pursuant to G.L.c. 231, §59H (2000 ed. & Sup. 2001), popularly called the “anti-SLAPP”[1] statute. For reasons stated in this memorandum, I DENY the motion.
COMPLAINT
The complaint claims defendants acted wrongfully in prosecuting the case of Eder v. Peterson, Civil No. 98-16 (Barnstable Super.Ct. April 7, 2000). According to the pleading, this Superior Court action lacked probable cause and was actuated by malice to harass plaintiffs from developing their thirty-three acres of land. The complaint further asserts defendants spread rumors that plaintiffs would fill wetlands and build sixteen houses in marshland, causing plaintiffs emotional stress.
MOTION TO DISMISS
1. Standard
The anti-SLAPP law shields petitioning activities from lawsuits based on the exercise of the right to petition government for redress. See G.L.c. 231, §59H. By its broad definition of petitioning activity, the statute encompasses petitions brought before governmental agencies concerning not only public matters, but private issues as well. See id.; see also McLarnon v. Jokisch, 431 Mass. 343, 347 (2000) (stating that this jurisdiction has “declined ‘to reinsert the rejected condition that the moving party’s activity must involve a matter of public concern’ ” (citations omitted)); accord Duracraft, 427 Mass. at 164. As stated by the then governor in his unsuccessful veto message of this statute, the law envelopes “a broad group of . . . claims."Id. at 162, quoting 1994 House Doc. No. 5604. Thus, clearly covered are private disputes between property owners which are the subject of a “governmental proceeding.” G.L.c. 231, §59H.
Additionally, the statute provides for “a special motion to dismiss,” G.L.c. 231, §59H, which shall be heard promptly and determined “as expeditiously as possible.” Id. “The special movant . . .’assert[ing]’ protection for . . . petitioning activities [must] make a threshold showing through . . . pleadings and affidavits that the claims against it are ‘based on’ the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.' ” Duracraft, 427 Mass. at 167-68.
In the instant case, the Petersons claim wrongdoing in the form of two activities. The first concerns defendants’ prosecution of a Superior Court action which the Petersons assert constituted abuse of process, malicious prosecution, and the means by which defendants inflicted, intentionally and negligently, emotional distress upon plaintiffs. The second concerns defendants’ circulation of rumors about the Petersons filling wetlands and building homes in marshlands, which plaintiffs assert caused them emotional harm.
Although the moving party has not proven that the activity of spreading rumors arises out of the Petersons’ complaint concerning defendants’ petitioning activity, this does not defeat defendants’ special motion to dismiss. To make a threshold showing, the moving party is required to prove that the complaint is “ ‘based on’ the petitioning activities alone and ha[s] no [other] substantial basis other than or in addition to the petitioning activities.” Duracraft, 427 Mass. at 167-68.
Standing alone, the claim by the Petersons that defendants circulated rumors about plaintiffs’ filling of wetlands and building upon marshlands does not assert a claim of intentional or negligent infliction of emotional harm. That tort requires, as an element, outrageous conduct.
[Outrageous conduct] cannot be predicated upon “mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,” nor even is it enough “that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by ‘malice,’ or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort”; rather, “[ljiability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.” Massachusetts cases have similarly described the limitations upon what can constitute “extreme and outrageous” conduct.
Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987), quoting Restatement (Second) of Torts §46, comment d (1965). See, e.g., Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976). Furthermore, rumor is defined as “gossip, hearsay” or spreading of a report. Random House Dictionary of the English Language 1153 (rev. ed. 1980). Gossiping and spreading stories are petty human common places neither so outrageous in character nor so extreme in degree “as to go beyond all possible bounds of decency, to be regarded as atro *480 cious and utterly intolerable in a civilized community." Foley, 400 Mass. at 99, quoting Restatement (Second) of Torts §46, comment d (1965).
Neither the complaint nor any affidavit proves that these rumors occurred in the course of defendants’ petitioning activities before the Falmouth Board of Appeals, the Barnstable Superior Court, the Land Court, or other public body. While spreading rumors is not a virtue, it is not the kind of behavior against which this tort is designed to guard. Thus, I find and rule that defendants have proven plaintiffs’ complaint arises out of defendants’ petitioning activities.
Accordingly, the burden shifts to plaintiffs to prove that the petitioning activity “was devoid of any reasonable factual support or any arguable basis in law, and that the moving parties’ acts caused actual injury to the responding party.” G.L.c. 231, §59H. To show defendants’ petitioning activity was devoid of any arguable basis in law, plaintiffs must show “that no reasonable person could conclude that there was [a basis in law] for requesting the review.” Baker v. Parsons, 434 Mass. 543, 555 n.20 (2001) (alteration in original). “In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.” G.L.c, 231, §59H. From these materials, “the party opposing a special motion to dismiss [must] show by a preponderance of the evidence that the moving party lacked any reasonable factual support or any arguable basis in law for its petitioning activity.” Baker, 434 Mass. at 553-54.
Defendants’ petitioning activities requested enforcement of Falmouth’s zoning bylaw Section 3427 to plaintiffs’ thirty-three acres. Section 3427 exempts from the requirement of a lot having 40,000 square feet any lot “in an RB or AGB zoning district, shown on a plan or described in a deed duly recorded at the registry of deeds before January 1, 1975, with an area of at least 20,000 square feet . . .” Attorney Kirk, representing defendants, contended before the board that the word “lot” must conform to the definition of the word “lot” set forth in the definition section of the Town of Falmouth zoning bylaw, which describes a lot as one shown on a plan endorsed by the planning board. Attorney Kirk asserted that the Peterson lots have been shown on two plans, both of which have been recorded at separate times at the registry of deeds with neither plan ever receiving the endorsement of the planning board. It is, therefore, useful to review the history of this thirty-three acre property.
2. History of the Parcel
In 1897, a plan of land was recorded at Barnstable Registry of Deeds. The plan included lots one to eleven, owned by an Ella F. Johnson, who also acquired other parcels, thus making Ella Johnson the owner of some thirty-three acres of land in the area of Gunning Point. The heirs of Ms. Johnson, in 1944, conveyed certain real estate to Myron Richardson, as trustee. The Johnson to Richardson deed consisted of a thirty-three acre parcel and made no reference to the 1897 plan or to any of the lots shown on the 1897 plan. That deed described the following land:
Southerly: by land now or formerly of Annie R. Whittemore, as evidenced by Land Court Certificate of Title No. 4794; Westerly: by Buzzards Bay and land now or formerly of Alice K. Boardman as evidenced by Land Court Certificate of Title No. 2439; Northerly: by land now or formerly of John P. Hervey and by a town way known as Gunning Point Avenue; Easterly: by a town way known as Sippewissett Road, consisting of approximately thirty-three (33) acres.
Also included in the Johnson to Richardson deed was a second parcel, which specifically referenced lots 115 and 116 on ”[p]lan of lots at Sippewissett, Falmouth, Mass, owned by John G. Haynes, June 1897.” In 1945, Richardson conveyed to John Peterson and Frank McLean the thirty-three-acre parcel previously deeded from Johnson to Richardson. That conveyance made no reference to the 1897 plan.
In 1947, McLean conveyed his interest in the thirty-three-acre parcel to John Peterson. In 1967, Peterson conveyed five parcels of land to John Peterson and Shirley Peterson, as Trustees of Peterson Trust. Included among the parcels conveyed was the thirty-three acre parcel, described in the same manner in which it had been described in earlier deeds.
In 1984, the Falmouth zoning bylaw was amended so that the minimum area requirement for the Residential B district, in which the subject property was located, increased from 20,000 square feet to 30,000 square feet. Again, in 1984, the Falmouth zoning bylaw was amended to include the following provision at Section 3427:
Any lot in a RB or AGB Zoning District, shown on a plan and described in a deed duly recorded at the Registry of Deeds before January 1, 1975, with an area of at least twenty thousand (20,000) square feet, shall be eligible to apply for a building permit by right, as long as the lot width is one hundred (100) feet or greater, provided that the lot conforms to all other requirements of the Zoning Bylaws.
In 1990, Shirley B. Peterson, as sole surviving Trustee of the Peterson Trust, conveyed to Shirley Peterson and Norman Asher, as Trustees of the John R. Peterson 1967 Trust, the thirty-three acre parcel. By deed dated March 16, 1990, and recorded on May 7, 1990 Shirley Peterson and Norman Asher, Trustees of the John R. Peterson 1967 Trust, conveyed the same thirty-three acre parcel to Shirley Peterson and Florence Hager, Trustees of the Peterson 1990 Real Estate Trust.
On July 8, 1990, there was recorded at the Barn-stable Registry of Deeds a plan of land prepared by the Peterson Trust. The land shown in the plan was in a *481 district zoned as residential B with a minimum area requirement of 30,000 square feet. The lots shown on the plan did not conform to current zoning requirements, and the plan was not reviewed by the planning board as either a subdivision plan or a plan endorsed as “approval not required.” The land shown on this plan is the thirty-three acre parcel described in the deeds previously mentioned.
In April of 1993, the Town of Falmouth increased the minimum area requirement of the residential B district from 30,000 square feet to 40,000 square feet. On July 31, 1997, Shirley Peterson, Trustee, as owner of lot nine, requested that the building commissioner issue a determination that lot nine was eligible for a building permit under the provisions of the Falmouth zoning bylaw. At the time of this request, the minimum area requirement in the district was 40,000 feet. At the time of the request, lot nine contained 24,909 square feet. The building inspector endorsed his assent to the issuance of the building permit and issued a building permit for the construction of a single-family residence on lot nine.
On September 10, 1997, the trustees conveyed lot nine to William and Brenda Dugan. Three days later, defendants made a written demand upon the building inspector to revoke the building permit issued for lot nine, and on September 19th, the building commissioner issued a written decision refusing defendants’ request. Defendants appealed the decision to the Falmouth Zoning Board of Appeals.
At the board of appeals, the Dugans challenged the standing of each and all of the appellants. The Dugans asserted that none of the appellants are abutters to the Dugan lot and that, excepting the Eders and Goldmans, whose lots lie across the street from the Dugan lot, none of the appellants even qualify as “parties in interest.” Mr. Dugan further stated that his lot cannot even be seen from the properties of these other appellants and that none of them can identify specific facts to show that the house under construction on the Dugan lot will cause them the kind of direct, nonspeculative injury to a private property interest that is required to confer standing.
Subsequently, the board of appeals found that none of the appellants had standing. It observed that two of the individuals are “parties of interest,” but that their presumptive standing had been properly challenged by the Dugans and Petersons. The board found that there was no evidence of direct, substantial, or ascertainable loss or harm shown by the appellants because of the construction of a single-family home on lot nine. The board observed that after the appellants’ standing had been challenged, Attorney Kirk made no effort to establish that any of the appellants have aggrieved-person status, but rather argued that standing is an issue to be decided by a court and not by the board of appeals. Finally, the board of appeals found that the lack of standing required dismissal of the appeal.
For “procedural completeness,” the board also found that the building commissioner did not err in issuing a building permit for lot nine. The board specifically found that lot nine had been duly recorded at the registry of deeds in 1897. The board observed that there was no planning board or zoning in the Town of Falmouth at that time and that the town has consistently protected lots shown on plans duly recorded at the registry of deeds at that time. The board pointed out that lot nine has been assessed as a single lot for the last forty or fifty years. Finally, the board found that lot nine qualifies under the requirements of having a lot size exceeding 20,000 square feet and a width in excess of one hundred feet.
Defendants appealed to the Superior Court. That action contained two counts. Count I challenged the board of appeals dismissal of defendants’ appeal of the building inspector’s decision to issue a building permit for lot nine. In that appeal, defendants argued that the board of appeals “exceeded its authority, as the board has no authority under G.L.c. 40A, §14, to dismiss an appeal under §§8 and 15 on the jurisdictional issue of standing.” In Count II, defendants requested a declaratory judgment that the 40,000 square feet requirement applies to all of the Peterson property and injunctive relief. The court denied that relief, finding that there was no showing of a likelihood of success. Eventually, this action was dismissed.
Defendants also brought an action in the Land Court. That action concerned lots 10A and fourteen. That case was dismissed after the parties entered into a settlement agreement, which became an agreement for judgment.
DISCUSSION
Plaintiffs contend that the defendants’ petitioning activity was devoid of any arguable basis in law because defendants lacked standing. The test of whether petitioning activity has any arguable basis in law does not require a showing that a lawsuit will prevail over eveiy procedural, jurisdictional, and legal challenge. See Baker, 434 Mass. at 554-55. Rather, the moving party must show that “no reasonable person could conclude that there was [a basis in law] for requesting that review.” Id. at 555 n.20.
Plaintiffs claim that defendants’ lack of standing to pursue their challenge of the building commissioner’s issuance of a construction permit made the appeal meritless. See Financial Investment Co. (Bermuda) Ltd. v. Geberit AG, 165 F.3d 526, 533 (7th Cir. 1998) (absence of colorable claim to standing warrants sanctions); see also Greening v. Moran, 953 F.2d 301 (7th Cir. 1992). Standing is of “critical significance” to the authority of a proceeding. Tax Equity Alliance v. Commissioner of Revenue, 423 Mass. 708, 715 (1996). In the context of G.L.c. 40A, standing is defined as “a plausible claim of a definite violation of a private right, a private property interest, or private legal interest.” Bell v. Zoning Bd. of Appeals of Gloucester, 429 Mass. *482 551, 554 (1999), quoting Harvard Square Defense Fund, Inc. v. Planning Bd. of Cambridge, 27 Mass.App.Ct. 491, 493 (1989). The requirement of injury to a personal legal-right compels a showing of “injury [which] is special and different from the concerns of the rest of the community.” Id., quoting Barvenik v. Board of Aldermen of Newton, 33 Mass.App.Ct. 129, 132 (1992); see Circle Lounge & Grille, Inc. v. Board of Appeal of Boston, 324 Mass. 427, 432 (1949) (“violation of law commonly gives rise to no private right of action unless there is also violation of some private right or duty”); see also Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 721-23 (1996). A showing of a special harm must rest upon “direct facts and not . . . speculative personal opinion.” Bell, 429 Mass. at 554, quoting Barvenik, 33 Mass.App.Ct. at 132. Conjuring possible or theoretical harm from a proposed use is just the type of “uncorroborated speculations” sought to be avoided by the standing requirements. Barvenik, 33 Mass.App.Ct. at 136.
In the instant matter, G.L.c. 40A requires that a citizen have standing to compel review of a building commissioner’s enforcement of the zoning act. See Green v. Board of Appeals of Provincetown, 404 Mass. 571, 572 (1989). In so requiring standing, the zoning act:
recognize(s) the distinction between a right of a nonaggrieved person to [request] enforcement (see §7) and the greater right of an aggrieved person to start an administrative proceeding seeking to compel enforcement (see §8). Under §7, a person, in writing may request a building inspector to enforce the zoning by-law and is entitled to a written response." The person need not be aggrieved. To go beyond that stage, [the] party must [have standing].
Id. at 573. Moreover, chapter 40A requires that “a person must be aggrieved in order to obtain relief through the administrative and judicial appellate processes.” Id. Accordingly, although any member of the public possesses the “right to request the [building commissioner] to enforce [a zoning] by-law under G.L.c. 40A, §7, . . . [only a] party . . . aggrieved by the [commissioner’s] decision [has the] right to seek administrative relief from the board under G.L.c. 40A, §§8 and 15, and, after exhausting administrative remedies, a right to obtain judicial review pursuant to G.L.c. 40A, §17.” Id. at 574, quoting Vokes v. Avery W. Lovell, Inc., 18 Mass.App.Ct. 471, 482-83 (1984).
In this case, defendants exercised their right to ask the building commissioner to enforce the bylaw. He refused. That refusal could only be appealed to the board of appeals by a person with standing. The board of appeals determined that the Eders, the Goldmans, and George Billings did not have standing entitling them to review of the building commissioner’s decision. This determination that defendants were not parties aggrieved by the building commissioner’s decision was based on the board’s findings that the defendants would not suffer any special cognizable harm because of the Petersons’ property’s exemption from the zoning requirement of 40,000 square foot lots. Defendants appealed that decision to the Superior Court. That appeal asserted that the board of appeals had no authority under G.L.c. 40A, §14 to dismiss an appeal under §§8 and 15 on the jurisdictional issue of standing.
I find and rule that the Superior Court appeal was devoid of any arguable basis in law. This appeal occurred in 1998, well beyond the Supreme Judicial Court’s decision in 1989, requiring standing as a prerequisite of a board of appeals review of a building commissioner’s enforcement decision. The Supreme Judicial Court in Green clearly stated that a party must be aggrieved by the inspector’s decision in order to have a “right to seek administrative relief from the board under G.L.c. 40A, §§8 and 15, and, after exhausting administrative remedies, a right to obtain judicial review pursuant to G.L.c. 40A, §17.” 404 Mass, at 574, quoting Vokes, 18 Mass.App.Ct. at 482-83 (emphasis added). Thus, the appeal by defendants to the Superior Court violated the holding on standing by the Supreme Judicial Court in Green. That decision required that a party have standing in order to first seek the administrative review before a board of appeals, a threshold requirement to the exercise of judicial review pursuant to G.L.c. 40A, §17. Defendants were without standing.[2] They had no right to administrative review of the building commissioner’s refusal to enforce the 40,000 square-foot requirement to the Peterson property. Lacking the right to administrative review, a threshold requirement before exercise of judicial review, the defendants’ appeal to the Superior Court was devoid of any arguable basis in law.
Having shown that defendants’ action was devoid of any arguable basis in law, plaintiffs must demonstrate that “actual injury” was suffered by them as a result of defendants’ petitioning activity. The Petersons asserted that because of this petitioning activity, they incurred legal fees and suffered acceleration in their blood pressure, clinical depression, including insomnia, for a period of years. They also claim that the petitioning activity has reduced their property values by approximately $500,000.
Injury is defined as ”[a]ny wrong or damage done to another, either in his person, rights,[3] reputation, or property.” Black’s Law Dictionary 706 (5th ed. 1979). The term “injury” in G.L.c. 259, §59H encompasses both personal injury and injury to property. Injury to property certainly encompasses loss of money. The filing of the Superior Court action, I find, caused plaintiffs to incur legal expenses. Thus, they lost money as a result of defendants’ petitioning activities. Their loss of money amounted to actual injury. I, thus, find and rule that plaintiffs have proven the second *483 prong that the petitioning activity of defendants caused actual injury.
ORDER
Based on the foregoing, defendants’ motion to dismiss is DENIED.

 “SLAPP” is an acronym for the phrase “Strategic Lawsuit Against Public Participation.” Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 160 n.7 (1998).

 Defendants’ only affidavit on standing is an affidavit of George Billings. In that affidavit, Mr. Billings states:
My involvement in both of the zoning board of appeals hearing and the appeal of the board’s decision to the Superior Court was my interest in being sure that the Falmouth zoning bylaw was being adhered to in reference to a question of density regarding the use of the subject property.

 Supreme Judicial Court has stated that:
“Iplersonal injury” standing by itself comprehends a wide range of physical harm . . . For example, the phrase “personal injury” has been held to include even injuries to reputation resulting from libel, malicious prosecution and false imprisonment, invasion of the right to privacy, as well as the alienation of affection of a husband or wife, seduction, false arrest and kindred tortious acts.
Matter of Madden, 222 Mass. 487, 492 (1916) (citations omitted).