Kern, Leila R., J.
Plaintiff Clift & Hensler, Inc. (C&H) filed an action against Howard Kaplan and Wendy Kaminer on May 28, 2004 (the first action).[3] Before they had been served in the first action, Kaplan and Kaminer filed a separate suit against Clift & Hensler, Inc., and its principals, William Clift and Julie Hensler, on June 2, 2004 (the second action). Due to the pendency of the first action, C&H, Clift and Hensler moved to dismiss the second action pursuant to Mass.Civ.P. Rule 12(b)(9) on July 6, 2004. On July 9, 2004, Kaplan and Kaminer answered the complaint in the first action, and on July 15, 2004 filed a third-party complaint against William Clift and Julie Hensler in that action. On August 26, 2004, this court (Locke, J.) denied C&H, Clift and Hensler’s motion to dismiss the second action and, sua sponte, consolidated the first and second actions.
On December 3, 2002, Clift filed a criminal complaint in Cambridge District Court, where he alleged that Kaplan left him a cell phone message on November 19, 2002, stating “If I ever see your wife [Julie Hensler] again, I’ll kill her.” A hearing date was set for December 17, 2002, and extended at the request of Kaplan and his attorney to January 28, 2003. Clift alleges that because his wife became frightened at the idea of attending the hearing, he voluntarily withdrew the complaint on January 27, 2003, and the criminal charges against Kaplan were dismissed.
The matter is before this court on C&H, Clift and Hensler’s special motion to dismiss Counts V (alleging abuse of process) and VI (alleging malicious prosecution) of the second action pursuant to G.L.c. 231, §59H, the Anti-SLAPP statute. For the reasons set forth below, plaintiff and third-party defendants’ special motion to dismiss is ALLOWED and Counts V and VI of the second action are DISMISSED.

BACKGROUND

The following facts are taken from Kaplan and Kaminer’s complaint in the second action.[4] They are the owners of condominium unit 14A at 2 Commonwealth Avenue in Boston. (Par. 7.) In or around January 2000, they spoke with Clift and Hensler about renovating Unit 14A. (Par. 8.) Hensler told Kaplan that she was a licensed architect and that she and Clift had performed other jobs on the scale of the proposed renovations to Unit 14A. (Par. 8.) Clift and Hensler told Kaplan and Kaminer that renovation work would begin on June 1, 2001 and be substantially completed by the end of August 2001. (Par. 9.)
On June 7, 2001, the parties entered into a Residential Contracting Agreement (the agreement) which listed design specifications, projected start and end dates, and an estimate for the total costs of design and renovations. (Pars. 15-17.) Throughout the summer of 2001 and into 2002, the completion date for the project was extended several times, and the relationship between the parties began to deteriorate. (Pars. 21, 24, 28.) By November 2002, Kaplan and Kaminer allege that although they had paid C&H approximately $490,000, C&H demanded further payment of $185,000 and then abandoned the project, even though Unit 14A was uninhabitable. (Par. 31.) After C&H stopped work on the project, Kaplan and Kami-ner hired an architect to correct problems with the construction and complete the unfinished portions of the project. (Par. 32.)
In December 2002, Kaplan informed C&H, Clift and Hensler that he would fire them and hire another contractor unless Clift responded to Kaplan’s phone calls. (Par. 35.) Kaplan states that in response to this threat, Clift filed the criminal complaint against him in Cambridge District Court. (Par. 35.) Kaplan denies the allegations of Clift’s criminal complaint. (Par. 35.)
Kaplan and Kaminer allege that they have incurred substantial monetary damages in order to correct problems with C&H’s design services and complete the project. (Pars. 34, 35.) In addition, Kaplan alleges that he incurred $4,993.15 in legal fees while preparing to defend against Clift’s criminal complaint. (Par. 35.)

DISCUSSION

Under G.L.c. 231, §59H, a party may make a special motion to dismiss where the claims asserted are “based on said party’s exercise of its right to petition under the constitution of the United States or of the commonwealth.” C&H, Clift and Hensler “must make a threshold showing that the claims against it are ‘based on’ the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.” Duracraft Corp. v. Holmes Prods. Corp., 417 Mass. 156, 167-68 (1998). The burden then shifts to Kaplan and Kaminer to show, by a preponderance of the evidence, that (1) C&H, Clift and Hensler’s exercise of their right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) C&H, Clift and Hensler’s acts caused actual injury to Kaplan and Kaminer. MacDonald v. Patton, 57 Mass.App.Ct. 290, 292 (2003), Baker v. Parsons, 434 Mass. 543, 544 (2001).

I. C&H, Clift and Hensler Have Made a Threshold Showing That Counts V and VI Are Based Solely on Clift’s Petitioning Activities.

In their current motion, C&H, Clift and Hensler allege that Kaplan and Kaminer’s claims in the second action alleging abuse of process and malicious prosecution are based solely on Clift’s petitioning activities, and therefore must be dismissed pursuant to G.L.c. 231, §59H. Kaplan and Kaminer argue that this court should deny the special motion to dismiss because it is untimely, and because the Anti-SLAPP statute is inapplicable, because they contend that Clift’s “petitioning activity” is only one element of their abuse of process[5] and malicious prosecution[6] claims.

*394
A.C&H, Clift and Hensier’s Special Motion to Dismiss Is Timely.

Kaplan and Kaminer’s argument that C&H, Clift and Hensier’s special motion to dismiss is untimely is without merit. G.L.c. 231, §59H specifically provides: “Said special motion to dismiss may be filed within sixty days of the service of the complaint or, in the court’s discretion, at any later time upon terms it deems proper.” See Donovan v. Gardner, 50 Mass.App.Ct. 595, 599 (2000). In this court’s discretion, the special motion to dismiss is timely, particularly in light of the consolidation of the first and second actions.

B.The Anti-SLAPP Statute Can Be Applied to Selected Counts Within a Complaint

Kaplan and Kaminer contend that C&H, Clift and Hensier’s attempt to apply the Anti-SLAPP statute to selected counts within a complaint is improper because the statute speaks in terms of lawsuits not individual counts within a multi-count complaint. This claim is also without merit. In many of the cases cited in defendants’ brief, the Anti-SLAPP statute was used to dismiss only certain counts of a complaint or counterclaim. See, e.g., Adams v. Whitman, 62 Mass.App.Ct. 850, 858 (2005) (reinstating the previously dismissed abuse of process counterclaim).

C.Clift’s Petitioning Activity Is the Sole Basis for Kaplan and Kaminer’s Abuse of Process and Malicious Prosecution Claims.

This court is persuaded that C&H, Clift and Hensler have made the threshold showing as to both of the counts at issue in the present motion. The “right to petition” protected by the statute includes “any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a ‘legislative, executive or judicial body or any other governmental proceeding...” G.L.c. 231, §59H. This right to petition can include, among other conduct, “reporting violations of law, writing to government officials . . . testifying before government bodies .. . [and] filing agency protests or appeals.” Office One, Inc. v. Lopez, 437 Mass. 113, 121 n.13 (2002), quoting Duracraft Corp., 427 Mass. at 161-62.
Clift’s petitioning activity (filing of a criminal complaint based on an alleged death threat) is the sole basis for the claims for abuse of process and malicious prosecution. CountV, for abuse of process, states: “In filing a criminal complaint against Kaplan, [C&H, Clift and Hensler] employed the legal process for an ulterior and illegitimate purpose.” Count VI for malicious prosecution, states: “In filing a criminal complaint against Kaplan, [C&H, Clift and Hensler] formally initiated proceedings with malice and without probable cause.” Both claims speak only to the filing of the criminal complaint against Kaplan. Where “the only conduct complained of is petitioning activity, then there can be no other ‘substantial basis’ for the claim.” Office One, Inc., 437 Mass, at 122.
Kaplan and Kaminer make allegations as to Clift’s intent or motive in filing the criminal complaint, however, the focus of G.L.c. 231, §59H is not on the validity of that complaint. See Adams, 62 Mass.App.Ct. at 853, citing Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 408 (2002) (“It is immaterial to an abuse of process claim that the process was properly issued, that it was obtained in connection with a proceeding brought with probable cause, or that the proceeding terminated in favor of its proponent”). Under G.L.c. 231, §59H, neither Clift’s motivation for his petitioning activity, nor his reasons for withdrawing the criminal complaint are relevant to this court’s consideration. See Office One, Inc., 437 Mass, at 122.
C&H, Clift and Hensler have met their initial burden of showing that Counts V and VI are based on Clift’s petitioning activity alone, and therefore have made the requisite threshold showing under the statute.

II. Kaplan and Kaminer Fail to Demonstrate that the Criminal Complaint Was Devoid of Legal or Factual Support.

Since C&H, Clift and Hensler have made a threshold showing that Counts V and VI were based solely on Clift’s petitioning activity, the burden shifts to Kaplan and Kaminer, who must show by a preponderance of the evidence that Clift’s criminal complaint was “devoid of any reasonable factual support or any arguable basis in law” and that his actions “caused actual injury” to Kaplan and Kaminer. Baker, 434 Mass, at 553-54.
In support of their special motion to dismiss, Clift and Hensler have each submitted affidavits which discuss the criminal complaint. William Clift, III states: “I did not file the criminal complaint against Mr. Kaplan because he threatened to hire another contractor to finish the project. I filed the criminal complaint because I believed his threat against my wife’s life was genuine.” (Aff. of William Clift, III, par. 8.) He explains further: “Before January 28, 2003, I was informed that my wife would need to attend the hearing. She was frightened to do so; therefore, at her request, I withdrew the Complaint on January 27, 2003 and the criminal charges against Mr. Kaplan were dismissed.” (Id., par. 9.) Julie Hensler states; “When my husband, William Clift, III, told me that Mr. Kaplan had threatened to kill me, I was afraid ... After learning that I would have to attend the hearing on the criminal complaint, I asked my husband, William Clift, III, to withdraw it.” (Aff. of Julie Hensler, pars. 7-8.)
In his affidavit, Howard Kaplan states that he never threatened to harm or kill Julie Hensler at any time. (Aff. of Howard Kaplan, pars. 13-14.) Further, he states that “the criminal complaint was the first time that I had heard anything about the alleged death threats that Clift claims I made against his wife. *395 During the intervening two weeks, Clift had not said anything to me about any alleged threats, nor had he terminated the construction contract.” (Id., par. 15.)
Despite his two-week delay in reporting the alleged death threat, Clift’s “petitioning activity raised timely concerns with the proper authorities.” Donovan, 50 Mass.App.Ct. at 599. The fact that the charges were not pursued and eventually withdrawn does not mean that they lacked a basis in law or fact.[7] See id. at 599-600. Clift and Hensler’s affidavits contend that the alleged death threat was genuine, as were their reasons for filing the criminal complaint against Kaplan. See McLarnon v. Jokisch, 431 Mass. 343, 349 (2000) (“Thus, despite conflicting affidavits, the judge could conclude that . . . plaintiff failed to meet his burden of proving no reasonable factual support or basis in law for the defendants’ petitioning activities.”). By protecting Clift’s right to petition, G.L.c. 231, §59H impinges on Kaplan and Kaminer’s right to include the abuse of process and malicious prosecution claims in their complaint. Duracraft Corp., 427 Mass, at 166. The legislature and the courts have evidenced a clear intent to err on the side of protecting petitioning activity. See, e.g., Baker, 434 Mass, at 553-54. Moreover, Kaplan and Kaminer’s attempts to re-write their complaint, alleging that these claims are aimed at other events besides Clift’s filing of the criminal complaint, are simply without merit.
Thus, Kaplan has not met his burden of demonstrating that Clift’s petitioning activities were substantially devoid of any basis in fact or law, and therefore Count V and VI of Kaplan and Kaminer’s complaint must be dismissed. As Kaplan and Kaminer have not met their burden of demonstrating, by a preponderance of the evidence, that Clift’s criminal complaint was devoid of reasonable factual or legal merit, it is not necessary to reach the question of whether the petitioning activity caused actual damage to Kaplan or Kaminer.

III. C&H, Clift and Hensler Are Entitled to Attorneys Fees.

G.L.c. 231, §59H provides: “If a court grants such special motion to dismiss, the court shall award the moving party costs and reasonable attorneys fees, including those incurred for the special motion and any related discovery matters.” This court accepts the movant’s stated attorneys fees, and finds that C&H, Clift and Hensler are collectively entitled to attorneys fees in the amount of $2,362.50.

ORDER

For the foregoing reasons, it is hereby ORDERED that C&H, Clift and Hensler’s Special Motion to Dismiss is ALLOWED and it is ORDERED that attorneys fees in the amount of $2,362.50 be awarded to them pursuant to G.L.c. 231, §59H.

The first action also named Richard A. Marks, as trustee of the Madison Realty Trust, as a defendant. Clift & Hensler, Inc. claimed that Madison Realty Trust was unjustly enriched as a result of Kaplan and Kaminer’s failure to pay for improvements to Unit 14A. On April 21, 2005, this court granted Marks’s motion to dismiss the complaint against him.

“In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.” G.L.c. 231, §59H. Because Kaplan and Kaminer oppose this special motion to dismiss, this court accepts as true all of the well-pleaded factual allegations of their complaint.

The common-law tort of abuse of process is comprised of the following elements: “(1) ‘process’ was used; (2) for an ulterior and illegitimate purpose; (3) resulting in damage.” Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 407 (2002).

“In an action for malicious prosecution, ‘the essence of the tort is . . . interference with the right to be free from unjustifiable litigation.’ ” Carroll v. Gillespie, 14 Mass.App.Ct. 12, 18 (1982), quoting Foley v. Polaroid Corp., 381 Mass. 545, 552 (1980) (other citations omitted). “The essential element to be proved is that the defendant lacked probable cause to believe that the plaintiff had committed the crime charged, and the plaintiff has the burden of proving that element.” Carroll, 14 Mass App.Ct. at 18, citing Morreale v. DeZotell, 10 Mass.App.Ct. 281, 281-82 (1980).

Clearly, both parties believed that the criminal complaint merited a hearing, and defendant Kaplan’s attorney even requested additional time to prepare for this hearing. Similarly, although Kaplan makes much of the fact that he incurred nearly $5,000 in legal fees preparing to defend the criminal action, this fact does not mandate the conclusion that the claim was without factual or legal basis.