Gants, Ralph D., J.
On September 16, 2005, the plaintiff Brooks Automation, Inc. (“Brooks”) tiled this action alleging that its former employee, Peter van der Meulen (“van der Meulen”), had breached the non-compete provision of his Separation Agreement, which barred him from competing with Brooks for a period of one year following his termination of employment, and his Non-Disclosure Agreement, which barred him *542 from divulging Brooks’s trade secrets and confidential information. Brooks also alleged that van der Meulen and the corporation he had incorporated after he left Brooks’s employ — Blueshift Technologies, Inc. (“Blue-shift”) — had tortiously interfered with Brooks’s prospective contractual relations with Applied Materials, Inc. (“Applied Materials") through improper means.
The origin of this litigation was that Brooks had been attempting to sell its semiconductor wafer manufacturing technology to Applied Materials, a large manufacturer of computer chip manufacturing equipment, but Applied Materials appeared to have lost interest in closing the deal. Brooks filed suit when it learned that Applied Materials was negotiating with Blueshift to purchase its semiconductor wafer manufacturing technology. Brooks contended that van der Meulen had violated the non-compete provision of his Separation Agreement and had stolen trade secrets he had learned at Brooks, which Blueshift had then allegedly used in developing the semiconductor wafer manufacturing technology it was trying to sell to Applied Materials.
Shortly after the complaint was filed, the defendants filed an emergency motion to expedite the trial. Defense counsel argued that a speedy trial was essential to the interests of justice because, until these claims were resolved, Blueshift would be unlikely to be able to close any deals with prospective customers and would have great difficulty persuading venture capitalists to invest the additional funds needed to keep the new company afloat until revenue began to flow in. In short, Blueshift contended that, if this case proceeded on the usual fast track, Blueshift, for all practical purposes, would lose even if it prevailed at trial, because it would no longer be financially viable by the time of the verdict. Along these same lines, Blueshift also contended that Brooks would win even if it lost at trial, because it would have effectively accomplished its purpose of neutralizing Blueshift as a competitor. This Court found Blueshift’s arguments persuasive, especially since Brooks’s attorney at the hearing was unable to articulate with clarity or precision which trade secrets van der Meulen had allegedly stolen or how he had purportedly engaged in competition during the one-year non-compete period. As a result, on September 27, 2005, trial was scheduled to begin on Monday, November 14, 2005, and discovery was placed on a greatly expedited schedule.[1]
On October 12, 2005, Blueshift filed a counterclaim alleging that Brooks had violated G.L.c. 93A and tortiously interfered with Blueshift’s contractual relationship with Applied Materials by filing the lawsuit on the afternoon of Friday, September 16, 2005 and informing Applied Materials of the lawsuit by email on Sunday, September 18, 2005, before it had served or even notified the defendants or defense counsel of its filing. On October 28, 2005, Brooks moved to dismiss the counterclaim, contending that Brooks had an absolute privilege to inform Blueshift’s prospective client of the filing of this lawsuit. In denying Brooks’s motion to dismiss on November 14, 2005, this Court wrote:
Brooks is correct that, if the filing of the civil action was not itself wrongful, neither a tortious interference nor a Chapter 93A claim may rest solely on Brooks having informed Blueshift’s prospective client of the existence of this lawsuit, even if Brooks’ purpose in telling the client were to ruin Blueshift’s chances of closing a prospective deal with the client. See generally Doe v. Nutter, McClennen & Fish, 41 Mass.App.Ct. 137, 140 (1996). However, Blueshift’s counterclaim of tortious interference with contract may prevail if Brooks initiated this civil action without “probable cause to believe the suit will succeed” and if Brooks, in filing suit, was “acting primarily for a purpose other than that of properly adjudicating [its] claims.” G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 273 (1991). If Blueshift can satisfy these elements, then Brooks’ notification to the prospective client regarding the existence of the lawsuit is admissible, not as an element of the tortious interference, but as evidence of Brooks’ primary motive in filing the action and of the causal connection between the lawsuit and Blueshift’s damages.
If Blueshift can prove the elements of a tortious interference with contract, then it may also prevail in proving that these same acts constituted an unfair or deceptive act or practice in trade or commerce, in violation of G.L.c. 93A.
Order on Plaintiffs Motion to Dismiss Counterclaim at pp. 1-2 (Nov. 14, 2005).
On the eve of trial, Brooks filed a second motion to dismiss, this one being a special motion to dismiss under what has become known as the anti-SLAPP statute, G.L.c. 231, §59H (“the special SLAPP motion to dismiss”) [2] In a special SLAPP motion to dismiss under §59H, Brooks bore the initial burden of proving by a preponderance of the evidence “that the activity at issue is ‘petitioning’ activity within the purview of the anti-SLAPP statute and that the claims in the litigation ‘are based on the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.’ ” Fabre v. Walton, 436 Mass. 517, 522 (2002), quoting Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. at 167-68. See also Office One, Inc. v. Lopez, 437 Mass. 113, 122 (2002); Baker v. Parsons, 434 Mass. 543, 550 (2001). This Court, prior to the trial, found that Brooks had met its initial burden of proving that Blueshift’s counterclaims were “based on the petitioning activities alone and [had] no substantial basis other than or in addition to the petitioning activities.” Fabre v. Walton, 436 Mass. at 522. This Court reasoned that, under §59H, the term, “a party’s exercise of its right to petition,” is defined as:
*543 1. “any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding”:
2. “any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding”;
3. “any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding”;
4. “any statement reasonably likely to enlist public participation in an effort to effect such consideration”; or
5. “any other statement falling within constitutional protection of the right to petition government.”
G.L.c. 231, §59H. From looking at these alternative definitions, it became clear that the Legislature chose not to define this right to petition narrowly. “[A] parly’s exercise of its right to petition,” in the context of petitioning the judiciary, includes not merely filing an action in court or making statements in court or in court papers, but specifically includes “any written or oral statement made in connection with an issue under consideration or review by a . . . judicial body,” or “reasonably likely to encourage consideration or review of an issue by a . . . judicial body . . .” G.L.c. 231, §59H. See generally Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. at 161-64; Office One, Inc. v. Lopez, 437 Mass. at 123 (2002) (speaking of the “broad definition of petitioning activily protected by the statute”).
This Court declared that, if Blueshift’s counterclaim had been fashioned as a common-law claim of abuse of process or a statutory claim that Brooks’s complaint was frivolous and in bad faith under G.L.c. 231, §6F, the counterclaim would plainly have been based on Brooks’s petitioning activities. See Fabre v. Walton, 436 Mass at 523-24; Donovan v. Gardner, 50 Mass.App.Ct. 595 (2000). This Court saw no reason why that conclusion would differ simply because Blue-shift chose to fashion its counterclaim as a tortious interference with contractual relations, in violation of the common law, and as an unfair and deceptive act in trade or commerce, in violation of G.L.c. 93A. The gist of the latter claims is essentially the same as the former — all rest on the claims in the complaint being found frivolous and in bad faith.
Since Brooks met its initial burden, the burden then shifted to Blueshift to demonstrate by a preponderance of the evidence that “(1) [Brooks’] exercise of [its] right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) [Brooks’] acts caused actual injury to [Blueshift].” G.L.c. 231, §59H; Fabre v. Walton, 436 Mass. at 524. If Blueshift were to fail to meet this burden, the special motion to dismiss must be allowed.
This Court expressly reserved decision until the conclusion of the trial as to whether Blueshift had met its burden of proving that Brooks’s exercise of its right to petition “was devoid of any reasonable factual support or any arguable basis in law” and had “caused actual injury” to Blueshift. See G.L.c. 231, §59H. The Court reasoned that trial was about to commence and the Court would essentially have to hear the same evidence that the jury was going to hear in order to decide the special SLAPP motion to dismiss. The Court also concluded, without objection from the parties, that in light of the anti-SLAPP statute, which was enacted after the 1991 decision in G.S. Enterprises, Inc. v. Falmouth Marine, Inc., one of the required elements set forth by the Supreme Judicial Court to prove tortious interference with contractual relations through the filing of a frivolous lawsuit — the element requiring Blueshift to prove that Brooks filed the lawsuit without “probable cause to believe the suit will succeed,” G.S. Enterprises, Inc., 410 Mass. at 273— needed to be amended to conform to the elements that Blueshift had to prove to defeat the special SLAPP motion to dismiss. In order to prevail on this claim, Blueshift now needed to prove that, when Brooks filed the lawsuit, its complaint “was devoid of any reasonable factual support or any arguable basis in law.” G.L.c. 231, §59H.
At the trial, this Court provided the following instructions of law to the juiy regarding Blueshift’s counterclaim for tortious interference with contractual relations;
The defendant Blueshift has filed a counterclaim alleging that Brooks has attempted improperly to interfere with its contractual relationship with Applied by filing this lawsuit when Brooks knew or should have known that it was devoid of any reasonable factual support or any arguable basis in law, claiming that Brooks was acting primarily with a purpose other than that of properly adjudicating [its] claims, that is, to prevent Blueshift from entering into a contract with Applied.
In order to prove that Brooks improperly interfered with Blueshift’s contractual relationship with Applied Materials, Blueshift must prove the following elements:
1. that Blueshift had a contractual relationship with Applied Materials;
2. that Brooks knew of this contractual relationship;
3. that Brooks intentionally interfered with this contractual relationship through improper means; and
4. that Blueshift suffered loss as a direct result of the conduct of Brooks.
In order to prove this third element — that Brooks intentionally interfered with Blueshift’s contractual relationship with Applied through improper means — Blueshift must prove two sub-elements:
*544 1. that Brooks, when it filed this lawsuit, knew that it was devoid of any reasonable factual support or any arguable basis in law; and
2. that Brooks, when it filed this lawsuit, was acting primarily with a purpose other than that of properly adjudicating its claims, that is, Brooks was acting with the primary purpose to prevent Blueshift from continuing its contractual relationship with Applied.
In order to prove the fourth element — that Blueshift suffered loss as a direct result of the conduct of Brooks — Blueshift must prove that, because of the intentional interference of Brooks, Applied has not paid the purchase order in Ex. 11 and the invoice in Ex. 13 for $209,300 and, without Brooks’ interference, it would have paid that purchase order in whole or in part.
This Court recalls no objection being made by any party to this instruction.[3]
The jury found in favor of Blueshift on its common-law counterclaim. In the special verdict form, through answers to separate questions, the jury found that Brooks had intentionally interfered with .Blueshift’s contractual relationship with Applied Materials through improper means and that Brooks’s interference had caused Applied Materials to fail to pay the purchase order for $209,300. Following these findings by the jury, the Court denied Brooks’s special SLAPP motion to dismiss.
Blueshift now seeks from the Court a finding that Brooks violated G.L.c. 93A by engaging in the misconduct that the jury found. Brooks opposes such a c. 93A finding and asks this Court to reconsider its earlier denial of the special SLAPP motion to dismiss.
DISCUSSION
Brooks presents an argument now that it never made before or during the trial — that the jury’s finding that Brooks intentionally interfered with Blueshift’s contractual relationship with Applied Materials through improper means should be given little weight by the Court because the members of the jury, as non-lawyers, could not have known whether the lawsuit, when filed, was devoid of any arguable basis in law. It is true that, applying the standard set forth in the anti-SLAPP statute, a lawsuit is not frivolous if it has any reasonable factual support under any arguable legal theoiy. Stated differently, a lawsuit is not frivolous if (1) it has reasonable factual support under the legal standard adopted by the court, or (2) it has reasonable factual support under a legal standard that has an arguable basis in law but is ultimately rejected by the court. A jury at trial, however, is not presented with the plaintiffs theoiy of the law; it is only presented with the judge’s instructions regarding the law, which is declared to be the law that must govern its consideration of the case. Therefore, while the juiy was asked to determine whether Brooks knew, at the time the lawsuit was filed, that the lawsuit “was devoid of any reasonable factual support or any arguable basis in law,” it reasonably could determine only whether there was any reasonable factual support for its position under the legal standard declared by the Court. It could not fairly determine whether there was any reasonable factual support under another legal standard that had an arguable basis in law but was nonetheless rejected by the Court.
Consequently, in considering whether Blueshift is entitled to prevail on its Chapter 93A claim, this Court has separately evaluated each of the three basic allegations that Brooks made in its initial or amended complaint:
1. that van der Meulen stole and misused Brooks’s trade secrets and confidential information;
2. that van der Meulen violated the non-compete provision by beginning to market or sell his wafer manufacturing technology within the one-year non-compete period; and
3. that van der Meulen violated the non-compete provision when he prepared to compete with Brooks during the one-year non-compete period by filing a provisional patent application and incorporating Blueshift.
As to the first and second allegations, the legal standard that Brooks relied upon in its complaint was the legal standard furnished by the Court to the juiy. The juiy, by its verdict, found that these allegations were devoid of any reasonable factual support. As to the third allegation, the Court rejected the legal standard relied upon by Brooks in its complaint. Brooks had contended that the non-compete provision prohibited van der Meulen within the one-year non-compete period from preparing to compete with Brooks. This Court rejected that proposition and told the juiy that, in the absence of specific language in the non-compete provision that prohibits the employee from preparing to compete (language which was not contained in van der Meulen’s Separation Agreement), a former employee is not barred during the non-compete period from taking steps to prepare to compete with his former employer once the prohibition against competition expires. Since there was abundant factual support for this third allegation under the legal standard argued by Brooks, this allegation could be found frivolous only if the legal standard was devoid of any “arguable basis in law.”
In order to determine whether the legal standard posited by Brooks was devoid of any “arguable basis in law,” this Court must first define what constitutes an “arguable basis in law.” The Supreme Judicial Court has observed that the anti-SLAPP statute protects one party’s exercise of its right to petition (here, Brooks’s right to petition the court for redress of van der Meulen’s alleged breach of his non-compete agreement), but thereby “impinges on the adverse parly’s exercise of its right to petition” (here, Blueshift’s right to petition the court for redress of Brooks’s tortious interference with its prospective contractual relations with Applied Materials). Baker v. Parsons, 434 Mass. *545 at 550, quoting Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. at 166. While the Legislature intended to give broad protection to parties exercising their right to petition, it did not intend to create “an insurmountable barrier” to those alleging a misuse of that right. See Baker, 434 Mass. at 554.
The Supreme Judicial Court has concluded that a claim is devoid of any arguable basis in law when “no reasonable person could conclude that there was [a basis in law] for” the relief sought. Id. at 553 n.20. See also Donovan v. Gardner, 50 Mass.App.Ct. 595, 600 n.10 (2000) (defining “sham litigation,” in part, as a lawsuit that is “objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits”), quoting Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60 (1993). A finding of no arguable basis in law requires more than a finding of an error of law. Baker, 434 Mass. at 553 n.20. Yet, a litigant may not prevent such a finding simply by showing any legal support for a claim. Id at 553. In the context of this case, for Brooks to defeat Blueshift’s claim, it must show that a reasonable person could conclude that there was a basis in law for its contention that mere preparation to compete constitutes prohibited competition under the non-compete provision of van der Meulen’s Separation Agreement.
The Supreme Judicial Court in Augat, Inc. v. Aegis, Inc. clearly established the contours of the duty of loyalty owed by an at-will managerial employee to his employer:
An at-will employee may properly plan to go into competition with his employer and may take active steps to do so while still employed . . . Such an employee has no general duty to disclose his plans to his employer, and generally he may secretly join other employees in the endeavor without violating any duty to his employer . . .
There are, however, certain limitations on the conduct of an employee who plans to compete with his employer. He may not appropriate his employer’s trade secrets ... He may not solicit his employer’s customers while still working for his employer .. . , and he may not carry away certain information, such as lists of customers ... Of course, such a person may not act for his future interests at the expense of his employer by using the employer’s funds or employees for personal gain or by a course of conduct designed to hurt the employer.
409 Mass. 165, 172-73 (1991). As noted, the Court distinguished between preparing to compete (which an employee may do without violating his duty of loyalty) and actively competing (which the employee may not do while still employed). Under the legal standard proffered by Brooks, as a result of the non-compete provision in the Separation Agreement, van der Meulen owed Brooks an obligation to not prepare to compete in the first year following his termination, which was an obligation he did not owe Brooks under his duty of loyalty when he was employed there. To be sure, van der Meulen could have accepted an obligation not to prepare to compete with his former employer if such an obligation had been specifically included in the non-compete provision of his Separation Agreement, but nothing in that non-compete provision suggests any obligation greater than that owed by a current employee under the duty of loyalty.[4]
Brooks contends that its legal position has an arguable basis in law because it is supported by a decision of the United States Court of Appeals for the Second Circuit in 1960 — DeLong Corp. v. Lucas, 278 F.2d 804 (2d Cir. 1960) — where the Court found that a former employee breached his non-compete agreement by performing engineering work for a competitor of his former employer on a new product that was not yet ready to be marketed. The plain and critical distinction between DeLong Corp. and the instant case is that, in DeLong Corp., the former employee — Lucas— had joined an existing competitor of DeLong Corp., which was actively marketing and selling products in competition with DeLong Corp. (albeit not the product that Lucas was working on). Consequently, the Second Circuit found that Lucas had violated the provision in his non-compete agreement that prohibited him from “assisting] anyone to compete with [his former employer] in any business relating to [Lucas’s] former employment.” DeLong Corp., 278 F.2d at 808-09. Here, Brooks knew that van der Meulen had not joined any company that was actively marketing or selling products in competition with Brooks. Rather, he had started his own company and was preparing to compete with Brooks once the one-year prohibition ended.
Not only does Brooks’s position have no reasonable support in the law, but it also is unreasonable as a practical matter. If a former employee with a routine one year non-compete agreement cannot even prepare to compete with his former employer during the one year, the effective length of the non-competition period, for all practical purposes, would be significantly longer than one year. An employee certainly may agree to a longer non-compete period but he cannot be tricked into a longer effective period of non-competition by signing a routine non-compete provision.
Consequently, this Court finds that no reasonable person could conclude that there was a basis in law for Brooks’s claim that mere preparation to compete constitutes prohibited competition under the non-compete provision of van der Meulen’s Separation Agreement. Therefore, this Court finds that this third allegation is devoid of any arguable basis in law.
This Court also finds, as did the jury, that the first and second allegations were devoid of any reasonable factual support, and that Brooks, when it filed suit, acted with reckless disregard as to whether there was any reasonable factual support for these allegations. As to the first allegation, throughout the litigation and even during the trial, Brooks never articulated with *546 precision which trade secrets or confidential information had been stolen and never appeared to have carefully considered whether its so-called trade secrets or confidential information were already in the public domain through patent disclosures. Ultimately, Brooks was left to argue that, although all of the specific components of its technology were already in the public domain, Brooks had combined these components into a unique wafer manufacturing technology that was not yet public. The fatal flaw in this argument, apart from the fact that the so-called combination of these components did not appear to require a great deal of ingenuity, was that the technology that van der Meulen was developing materially differed from Brooks’s technology in the manner in which these components were combined. In short, Brooks’s case, from its inception, was a case in search of a viable theory, and no viable theory ever materialized.
This Court does not find that Brooks or its attorneys knew when they filed this suit that its claims were devoid of any reasonable factual support. Rather, it finds that Brooks filed suit when it sensed the possibility of a trade secret theft without having reasonably investigated whether what it sensed indeed constituted the theft of a trade secret.[5] It apparently hoped during discovery to learn whether there was any substance to its suspicions. When its preliminary theories fell victim to the facts as they emerged during discovery, Brooks did not drop its case but simply tried to conjure a new theory. Unfortunately for Brooks, the theory it ultimately presented at trial also failed to find any reasonable support in the evidence that was admitted at trial.
This Court also finds that Brooks filed this action prematurely, with reckless disregard as to whether there was any reasonable factual support for these allegations, because it was concerned about Blueshift’s developing relationship with Applied Materials, a major customer it had worked hard to cultivate, and wanted to disrupt that relationship. Brooks recognized that the filing of a lawsuit against Blueshift alleging that van der Meulen had stolen Brooks’s trade secrets and that Blueshift’s wafer manufacturing technology lawfully belonged to Brooks would substantially chill, if not end, Blueshift’s successful courtship of Applied Materials. Brooks’s recognition of the potential impact of its lawsuit explains why it notified Applied Materials of its filing of the lawsuit even before it notified van der Meulen or Blueshift, or their attomeys.
As to the second allegation — that van der Meulen violated the non-compete provision by beginning to market or sell his wafer manufacturing technology within the one-year non-compete period — this Court finds that it, too, was devoid of reasonable factual support and was prosecuted with reckless disregard as to whether there was any reasonable factual support for this allegation. This allegation was not specifically made in the original complaint, but was included in the amended complaint. The only evidence that van der Meulen had begun to market or sell his wafer manufacturing technology during the one-year non-compete period came from a single sentence in a Februaiy 14, 2004 email from van der Meulen in which he stated, “Our initial customers (whom we know intimately), have reacted positively to this new concept.” This email was not known to Brooks when it filed suit, but was only obtained during the course of discovery. As to this email, van der Meulen testified that the “initial customers” referenced in the email were experts who formerly had worked in the industry and whom he was using as a “sounding board” to determine how receptive actual customers would be to his new technology. Brooks did not choose to call any of the individuals that van der Meulen identified as his “sounding board” experts; nor did it offer any evidence that any prospective customer had been presented with van der Meuleris new concept. Indeed, it offered no evidence to rebut van der Meulen’s interpretation of the email. When viewed in the context of the entirely of the case, this lone email was too slender a reed reasonably to support Brooks’ factual contentions.
Brooks contends that this Court cannot find that the allegations were devoid of reasonable factual support because the Court denied the defendants’ motion for summary judgment. While it often may be true that the denial of a motion for summary judgment reflects the presence of reasonable factual support for the allegations in the complaint, it is not true here. Because of the expedited schedule for trial, the opposition to the motion for summary judgment was not filed until November 7, 2005, and the motion hearing was conducted on November 9, 2005, just five days before trial was scheduled to begin. The motion and opposition, with the exhibits, when piled on a desk, were at least two feet high. This Court, in denying summary judgment to the defendants, explained to defense counsel that it could not possibly examine that quantity of documents to determine whether there was a genuine issue of material fact in the few days before trial was to commence, and that a practical consequence of obtaining the expedited trial Blueshift sought was the loss of its opportunity for the Court meaningfully to consider its summary judgment motion. Therefore, the denial of summary judgment here says little or nothing about the weight of Brooks’s case.
Moreover, this Court rejects Brooks’s contention that the denial of the defendants’ motion for summary judgment automatically requires the allowance of Brooks’s special motion to dismiss because the existence of a genuine issue of material fact means that Brooks’s claim is not devoid of reasonable factual support. The summary judgment standard is designed to protect the right of litigants to have their case decided by a jury when any rational jury, viewing the evidence in the light most favorable to the plaintiff, could find in the plaintiffs favor. A motion for summary judgment does not evaluate the credibility of any witness; the Court must assume that every witness *547 with evidence favorable to the plaintiff will be believed. This Court does not find that this degree of deference is required in determining whether a claim is devoid of reasonable factual support. If a witness testifies in support of a plaintiffs claim but no reasonable person, considering the totality of the evidence, would believe him, the plaintiffs claim would survive summary judgment but could still be devoid of reasonable factual support. In considering whether a party’s counterclaims were “wholly insubstantial, frivolous and not advanced in good faith” under G.L.c. 231, §6F, a standard that is roughly equivalent to “devoid of any reasonable factual support,” the Supreme Judicial Court in Danger Records, Inc. v. Berger declared:
The issue is not whether there was any evidence that would, viewed in the light most favorable to Berger, have supported his claims and defenses— the issue is whether there was evidence to support the judge’s conclusion that his claims were wholly insubstantial, frivolous, and not advanced in good faith. The discrepancies between Berger’s assertions in this case and the positions he took during his divorce, and the fact that he “conjure(d) up” the documentation to support his claims, would support the judge’s findings. Further, the judge who rendered the §6F award was the trial judge who had observed Berger’s testimony and found it wholly incredible. Berger acknowledges that “the lack of credibility of a party about an important issue can furnish the basis for a finding that a claim or defense is insubstantial and frivolous.” Thus, the mere fact that Berger himself testified in support of his own claims, and that there were shreds of evidence that would arguably support those claims (which were readily susceptible of alternate interpretations and explanations), would not preclude a finding that the claims were wholly insubstantial and frivolous — even a person bringing the most patently false and groundless claim will customarily offer something that ostensibly supports it.
444 Mass. 1, 13 n. 12 (2005) (emphasis in original). Similarly, here, the fact that a single sentence in an email, viewed in isolation, may be read literally to infer that van der Meulen was actively beginning to market his technology during the one year non-compete period may be sufficient to defeat summary judgment, but a claim resting on that email alone could still be devoid of reasonable factual support if that inference, viewed in the context of the totality of the evidence, would be unreasonable. The jury and this Court agree that Brooks’ second allegation, which rests solely on that February 14 email, is devoid of reasonable factual support.
This Court has carefully considered whether the filing of this action with reckless disregard as to whether there was any reasonable factual support for these allegations, motivated by the desire to interfere with Blueshift’s developing contractual relationship with Applied Materials, constitutes an unfair and deceptive act or practice in trade or commerce, in violation of G.L.c. 93A. This Court finds that such reckless disregard, when motivated by the desire to interfere with a competitor’s prospective contractual relationship with a coveted customer, is not only sufficient to constitute an unfair and deceptive act or practice in trade or commerce but is also sufficient to constitute a wilful violation of Chapter 93A. See Kattar v. Demoulas, 433 Mass. 1, 15-16 (2000) (“a finding of ‘wilful’ conduct within the meaning of c. 93A is satisfied where the defendant has acted recklessly”); Still v. Commissioner of the Dep’t of Employment & Training, 423 Mass. 805, 812-13 (1996) (“decisions construing the multiple damages provisions of G.L.c. 93A have imposed such damages for ‘wilful’ or ‘knowing’ violations, equating the former with reckless conduct and the latter with intentional acts”).
Consequently, this Court finds that Brooks committed an unfair and deceptive act or practice in trade and commerce when it filed this action with reckless disregard as to whether there was any reasonable factual support or arguable legal basis for these allegations, motivated by the desire to interfere with Blueshift’s developing contractual relationship with Applied Materials. This Court finds that the unfair and deceptive act did indeed interfere with Blueshift’s contractual relationship with Applied Materials, and adopts thejuiy’s finding that the damages caused by this violation totaled $209,300 — the amount of Blueshift’s invoice that Applied Materials failed to pay after this lawsuit was filed.
Brooks contends that, regardless of these findings, this Court cannot find a Chapter 93A violation on these facts because the filing of a complaint, even a frivolous complaint, is not an act done “in the conduct of any trade or commerce,” as required under G.L.c. 93A, §2(a). This Court agrees that the filing of a frivolous complaint, standing alone, is not an act done “in the conduct of any trade or commerce." However, it becomes an act done in the conduct of trade or commerce when, as here, it is motivated by an intent to interfere with a competitor’s contractual relationship with a key and much coveted customer.
Brooks also contends that Blueshift cannot prevail under G.L.c. 93A, §11 because “the actions and transactions constituting the alleged ... unfair or deceptive act or practice” did not occur “primarily and substantially within the commonwealth." G.L.c. 93A, §11. This argument is plainly futile, since the frivolous complaint that interfered with Blueshift’s contractual relationship with Applied Materials was filed in Massachusetts, and Blueshift is a Massachusetts corporation whose employees work in Massachusetts.
For these reasons, this Court finds in favor of Blue-shift on its claim under G.L.c. 93A, § 11 and finds, as did the jury, that Blueshift’s actual damages total $209,300. This Court also finds that Brooks’s unfair act was a wilful violation of G.L.c. 93A, §2. Having so found, this Court must decide whether to double or treble the actual damage award of $209,300. See G.L.c. 93A, §11. This *548 Court shall treble that damage award for three reasons.
First, Brooks’s reckless filing of this frivolous lawsuit succeeded, at least, in freezing Blueshift’s developing relationship with Applied Materials, and in diverting van der Meulen’s and Blueshift’s focus and financial resources away from improving its technology, obtaining necessary capital, and otherwise building the nascent corporation to defending against this lawsuit. The $209,300 that Applied Materials failed to pay Blueshift on its invoice is simply the damages that are provable now from the lawsuit; this damage award does not reflect the diminished likelihood that Blue-shift will make the successful transition from a start-up company into a mature business competitor of Brooks. Even with treble damages, Brooks still may benefit from its unfair act of recklessly filing a frivolous complaint against Blueshift and van der Meulen if Blueshift is unable to survive or is competitively weaker because of the time and focus it lost from having to defend against Brooks’s lawsuit.
Second, Brooks’s filing of this frivolous lawsuit is even more egregious when one considers that it expressly promised in the Separation Agreement that it would make “good faith attempts” to resolve any dispute with van der Meulen before filing suit. This Court considers it an aggravating factor that Brooks promised not to file an action against van der Meulen for any alleged violation of the Separation Agreement without first attempting to make a good faith attempt to resolve its concerns about his alleged breach of the Agreement, and then filed its lawsuit with reckless disregard as to whether there was any reasonable factual support or arguable legal basis for these allegations in order to interfere with Blueshift’s developing contractual relationship with Applied Materials.[6]
Third, the trebling of damages is necessary to send a loud and clear message to Brooks and to any other corporation that seeks to misuse the right to sue in order to interfere with a competitor’s efforts to develop a contractual relationship with a coveted customer. A start-up company is especially vulnerable to such an abuse of process, since time, effort, and money are needed to defend even a frivolous lawsuit and all are generally in short supply in a start-up company. It is important to make clear to any corporation that contemplates crushing a vulnerable competitor by conjuring a frivolous lawsuit that it will pay dearly for its misuse of the judicial process.
ORDER
For the reasons stated above, this Court ORDERS that:
1.This Court finds in favor of Blueshift on its claim under G.L.c. 93A, §11 and awards Blueshift actual damages of $209,300, plus its reasonable attorneys fees (which this Court will separately determine) and costs.
2. This Court also finds that Brooks’s unfair act was a wilful violation of G.L.c. 93A, §2, and trebles the actual damage award, awarding damages in the amount of $627,900.
3. Upon reconsideration, this Court again DENIES Brooks’s special motion to dismiss Blueshift’s counterclaim.

 Trial, in fact, did not commence until Tuesday, November 15, 2005. Motions in limine, however, were heard on November 14.

 “SLAPP” is an acronym for Strategic Lawsuit Against Public Participation, and was coined by George Pring and Penelope Canan in their law review article, “SLAPPS: Strategic Lawsuits Against Public Participation,” 7 Pace Envtl.L.Rev. 3, 4 (1989). See Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 160 n.7 (1998).

 Brooks now argues that this Court failed to inform the jury that Blueshift bore the burden of proof as to its counterclaim. Brooks has waived this argument, having failed to raise this objection at trial. Its argument is also meriüess, since this Court, earlier in its final instructions and during the preliminary instructions at the beginning of the trial, explicitly informed the jury that each party bringing a claim bears the burden of proof as to the claim it brings.

 The non-compete provision in the Separation Agreement provides in pertinent part:
[F]or a period of one year after the Termination Date (the “Non-Competition Period”), Employee agrees that Employee, directly or indirectly, shall not. . . consult with or in any way aid or assist any competitor of the Company . . . or engage or attempt to engage in any employment consulting or other activity, which activity competes, directly or indirectly, with the business of the Company . . .
Separation Agreement at para. 4.

 After the jury’s verdict, this Court characterized Brooks’ lawsuit as the legal equivalent of a “sound shot,” the dangerous practice of an inexperienced hunter to fire his shotgun immediately in the direction of any sound that appears to have been made by a live animal. The danger of a “sound shot” in the woods is that sometimes the live animal that made the sound is a hiker or another hunter, who can be killed or seriously injured by such recklessness. The danger of a “sound shot” in the filing of a lawsuit against a prospective competitor is that the competitor may also die a corporate death through bankruptcy or suffer serious financial injury, especially if it is attempting to procure new customers or interest venture capitalists who are wary of becoming embroiled in litigation.

 This Court is mindful that it earlier denied van der Meulen’s motion to dismiss Brooks’ lawsuit for its alleged violation of this provision, finding that Brooks’s filing of the lawsuit would not be barred if the complaint were meritorious. This Court also earlier found that Brooks’s violation of this provision, standing alone, is not sufficient to state a claim under G.L.c. 93A. This Court, having found that Brooks filed this lawsuit with reckless disregard as to whether it had reasonable factual support or an arguable basis in law, now finds that Brooks failed to act in good faith when it filed suit in this case. While the failure to act in good faith is sufficient alone to constitute a wilful violation of Chapter 93A, that failure is even more serious when Brooks specifically promised to act in good faith in resolving disputes arising from its Separation Agreement with its former employee.