Gants, Ralph D., J.
On January 17, 2006, this Court found in favor of the defendant Blueshift Technologies, Inc. (“Blueshift”) on its counterclaim under G.L.c. 93A and awarded Blueshift actual damages of $209,300, which it trebled to $627,900, plus reasonable attorneys fees and costs. Findings of Fact, Conclusions of Law and Order on Blueshift Technologies, Inc.’s Application for Relief Under G.L. 93A (“Chapter 93A Decision”) at 20-21 [20 Mass. L. Rptr. 541). Blueshift has now applied for its attorneys fees and costs, seeking an award of $873,830.50 in attorneys fees and $88,222.25 in costs, for a total of $962,052.75. The plaintiff Brooks Automation, Inc. (“Brooks”) opposes the application, contending that the amount sought is unreasonably high under the circumstances of this case.
After hearing, having considered the fee application and the opposition, and the applicable law, this Court hereby finds that the reasonable attorneys fees and costs that Blueshift incurred in prevailing on its Chapter 93A claim total $848,830.50 in attorneys fees and $88,222.25 in costs, for a total of $937,052.75, and orders that the judgment be amended to provide for the award of these attorneys fees and costs.
Under G.L.c. 93A, § 11, if a Court, as here, finds that the counterclaim defendant has committed unfair and deceptive acts in violation of G.L.c. 93A, §2, the counterclaim plaintiff “shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys fees and costs incurred in said action.” G.L.c. 93A, §11. “While the amount of a reasonable attorneys fee is largely discretionary, the judge should consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation, and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.” Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979). See also Heller v. Silverbranch Construction Corp., 376 Mass. 621, 628-29 (1978). “No one factor is determinative, and a factor-by-factor analysis, although helpful, is not required.” Berman v. Lirmane, 434 Mass. 301, 303 (2001). In making its determination, the Court is not required to review each individual item in the legal bill, but can consider the bill as a whole. Id.
In finding a Chapter 93A violation, this Court essentially found that Brooks’s complaint in this action *54 was frivolous, that is, it did not have reasonable factual support under the legal standard adopted by the court, and did not have reasonable factual support under any legal standard that had an arguable basis in law. See Chapter 93A Decision at 13-14. This court also found that Brooks, when it filed suit, acted prematurely, with reckless disregard as to whether there was any reasonable factual support for the allegations in the complaint, because it was concerned about Blueshift’s developing relationship with Applied Materials, Inc., a major customer it had worked hard to cultivate, and wanted to disrupt that relationship. Id. This Court concluded:
This Court has carefully considered whether the filing of this action with reckless disregard as to whether there was any reasonable factual support for these allegations, motivated by the desire to interfere with Blueshift’s developing contractual relationship with Applied Materials, constitutes an unfair and deceptive act or practice in trade or commerce, in violation of G.L.c. 93A. This Court finds that such reckless disregard, when motivated by the desire to interfere with a competitor’s prospective contractual relationship with a coveted customer, is not only sufficient to constitute an unfair and deceptive act or practice in trade or commerce but is also sufficient to constitute a wilful violation of Chapter 93A.
Id, at 17.
This Court is mindful that Blueshift would not have been awarded attorneys fees if it had simply prevailed on its common-law counterclaim of tortious interference with contractual relations, and that the award of attorneys fees must be focused on the prosecution of its Chapter 93A counterclaim, from which the entitlement to attorneys fees is derived. See Miller v. Risk Management Foundation of the Harvard Medical Institutions, Inc., 36 Mass.App.Ct. 411, 421 (1994). Yet, where, as here, a single chain of events gives rise to both the common law and the Chapter 93A claim, the Court need not attempt to apportion the legal effort between the two claims. Hanover Insurance Company v. Sutton, 46 Mass.App.Ct. 153, 177 (1999). This Court is also acutely aware that the essence of the Chapter 93A violation here is that Brooks sought to severely, perhaps fatally, injure a budding competitor in its business by recklessly filing a lawsuit that, by its nature, imperiled the continued existence of Blueshift. Pragmatically, justice cannot be served when a Chapter 93A violation is found in these circumstances unless Blueshift is awarded all the reasonable attorneys fees and costs it incurred in having to defend itself from this frivolous lawsuit. Therefore, this Court finds that the appropriate measure of reasonable attorneys fees and costs for this Chapter 93A violation is the entirety of the reasonable attorneys fees and costs that Blueshift incurred in defending itself against the allegations in Brooks’s complaint and in prosecuting its counterclaim.
In determining what constitutes an award of reasonable attorneys fees and costs, this Court has considered each of the so-called Linthicum factors set forth above, which I will address separately.
The Nature of the Case and the Issues Presented
This Court recognizes that the factual issues presented in this case were extremely difficult. The legal issues were not intrinsically difficult, but they were made more difficult to address because of the problems Brooks had in articulating its legal position in a concise and timely fashion. In short, because Brooks could not until the eve of trial articulate precisely what Blueshift and Peter van der Meulen (“van der Meulen”) had done that constituted a breach of his restrictive covenant or a theft of trade secrets, Blueshift was faced with essentially a “moving target” of allegations, each of which it had to rebut, both factually and legally.
This Court also recognizes, as it noted earlier, that the future of Blueshift likely depended on the outcome of this litigation. From the point of view of a fledgling corporation like Blueshift, this was a life or death case, and it required a commitment of time from able, experienced attorneys commensurate with the stakes.
Finally, this Court also recognizes that the trial of this case took place roughly two months after the complaint was filed, at Blueshift’s request, based on its argument, ultimately borne out at trial, that the lawsuit was frivolous and needed to be resolved quickly, because Blueshift would have immense difficulty attracting necessary venture capital and new customers if the fate of the company hedged on a pending lawsuit. In essence, Blueshift convinced the Court that, if the trial was scheduled in the usual fashion, Blueshift would lose in its competitive forum even if it prevailed in the legal forum, because there would be nothing or little left of the company by the time it was vindicated at trial. The fast-track which this case was placed on effectively meant that it required an enormous amount of attorney time and effort in a concentrated period.
The Time and Labor Required
While this Court believes that expediting the trial actually reduced the amount of attorneys fees expended, largely because there are only so many hours that even attorneys can work in that short a period of time, it credits the statements of Blueshift’s lead attorney, Mark Tully, that he, associate Neil Smith, and paralegal Robin van der Meulen (no relation to Peter van der Meulen) devoted the vast majority of their time during this two-month period to this litigation, and that other attorneys were needed to assist them in various matters and consult with them on numerous legal and factual issues. This Court also credits the *55 affidavit of attorney Tully and attorney Hosp that the time asserted as being devoted to this litigation was actually devoted to this litigation and was reasonably necessary to its success.
The Amount of Damages Involved
The statutory directive that reasonable attorneys fees be awarded “irrespective of the amount in controversy” means that the prevailing party is entitled to reasonable attorneys fees even if the money award is purely nominal. See Raymer v. Bay State National Bank, 384 Mass. 310, 319-20 (1981) (awarding “modest attorneys fees” in the amount of $4,500 on money judgment of $1). Yet, the inclusion of the amount of damages involved among the Linthicum factors indicates that what is reasonable may depend, at least in part, on the amount of damages involved and the result obtained. Linthicum v. Archambault, 379 Mass, at 388-89. As Judge Patti Saris wrote, “While [the phrase, ‘irrespective of the amount in controversy’] means the amount in controversy is not controlling, I have never heard of determining a reasonable fee without paying some regard to what was involved. The legislature, for example, cannot be thought to have intended that, simply because a plaintiff has a legitimate, but modest, Chapter 93A claim counsel could proceed as though conducting a multimillion dollar class action.” Morse v. Mutual Federal S.& L. Ass’n of Whitman, 536 F.Sup. 1271, 1283 (D.Mass. 1982).
Here, the amount awarded on the Chapter 93 claim — $209,300, trebled to $627,900 — was the amount claimed. If one were to look at this amount in isolation, one could properly question the reasonableness of an application seeking roughly $960,000 in attorneys fees and costs when the potential damage award, trebled, was roughly one-third less than that. However, as discussed earlier, this Chapter 93A claim cannot justly be viewed in isolation, since the defense and defeat of Brooks’s claims in its complaint was necessary to the successful prosecution of Blueshift’s Chapter 93A claim, and a victory for Brooks would have been a devastating, perhaps deadly, blow to Blueshift’s corporate future. Since the fate of a corporation, and the livelihood of its employees, was at risk, this Court finds that the amount of damages involved was immense, involving many millions of dollars.
The Result Obtained
The ultimate result obtained by Blueshift in this litigation was a complete victory on every count in the complaint and counterclaim. Not only did Blueshift defeat Brooks’s claims, it proved them to be frivolous and Brooks to have been reckless in filing them.
The Experience, Reputation, and Ability of the Attorneys
The performance of Goodwin Procter in this litigation was first-rate in every respect. Attorney Tully did a superb job in trying the case to the jury and in arguing the many motions. The written work submitted was top-notch. Even the audio-visual displays and the manner in which they were presented to the jury were well done. In short, this was an extraordinarily well-litigated case by able attorneys, paralegals, and staff in a highly regarded law firm.
The Usual Price Charged for Similar Services by Other Attorneys in the Same Area
This Court credits the affidavit of Paula Alvary, a consultant to law firms whose professional experience gives her access to the billing rates charged by many large national law firms with Boston offices, that the billing rates charged by the Goodwin Procter partners who billed in this litigation for their work on behalf of Blueshift were roughly just above the average for large national firms in the Boston market, and the billing rates for associates were slightly below this average. She found that, during the pertinent time period, about fifty percent of similarly experienced partners in other firms had rates lower than the Goodwin Procter partners and about thirty percent of similarly experienced partners in other firms had rates higher than the Goodwin Procter partners. She also found that two of the three associate class years who billed on this matter at Goodwin Procter were lower than the billing rates for comparable associate class years at other large national firms in the Boston market.
Brooks challenges the comparison used by Alvary, noting that she focused only on large, national law firms. Implicit in this criticism is that Blueshift could have successfully litigated this case with a smaller, local firm. To be sure, there are certainly able, smaller, purely local law firms that could have represented Blueshift in this action, perhaps at a lower price. Yet, it would have been difficult for a small law firm to devote the quantity of resources needed to be devoted in a short time frame to obtain the result that Goodwin Procter was able to produce for Blueshift. Here, as noted earlier, success at trial after a protracted litigation would have yielded, at best, a Pyrrhic victory for Blueshift, since the new corporation may not, by that time, have been financially viable. Moreover, also as noted earlier, for Blueshift, the entire future of the corporation rested on the result, so it was reasonable to seek out the most able, most experienced law firm to represent it in this action. Therefore, this Court does not believe it fair to limit the attorneys fees due to Blueshift to the billing rate charged by smaller local firms, since most such firms would not have been able to produce for Blueshift the same result produced here by Goodwin Procter. Indeed, this Court also observes that it rings hollow for Brooks to complain about Blueshift’s retention of a large, national firm to represent it in this action when Brooks, which had much less at stake in terms of its corporate survival, chose to retain its own large, national firm to prosecute this action. Although the Court specifically invited such a submission, Brooks’s law firm has not provided an affidavit indicating that its own billing rates were *56 below that charged by Goodwin Procter or that it litigated this case for less than Goodwin Procter.
The Amount of Awards in Similar Cases
Brooks has informed this Court of at least two other cases decided by extraordinarily able Superior Court judges in which the amount of attorneys fees sought by the prevailing party in a Chapter 93A action were considerably reduced by the Court. This Court gives little weight to these other cases because this Court knows too little of the circumstances that led those able judges to conclude that the attorneys fees sought were excessive. Certainly, in some cases, the number of attorneys and staff who billed time in this case on behalf of Blueshift — ten attorneys, a senior litigation technology specialist, a paralegal, and a case assistant — would be excessive or inefficient, but this Court does not find that it was here. To be sure, the billing rates charged by all the attorneys and paralegals are large, but they are roughly the median charged among comparable large firms with Boston offices, and therefore reflect approximately the “going-rate” in the large firm attorney market. To characterize these attorneys fees as “unreasonable” simply because they are expensive would be a moral judgment, not a market judgment. By analogy, it may seem crazy that a utility infielder in major league baseball earns $1.5 million per year while a Superior Court judge earns $112,000, but that does not mean it would be unreasonable for a baseball team to pay that amount. Indeed, an arbitrator may justly find that the ballplayer is “entitled” to that amount if his salary is determined by arbitration. The $600 per hour billed by attorney Tully is certainly a great deal of money, but it is comparable to that billed by other lawyers in Boston of his ability and experience.
Blueshift’s Motion for Summary Judgment
While this Court finds that the amount of attorneys fees and costs sought by Blueshift is generally fair and reasonable, it will reduce the amount sought for the time invested in preparing and filing Blueshift’s motion for summary judgment. Blueshift spent roughly $75,000 in preparing its motion for summary judgment on the eve of trial, when it reasonably should have recognized that the Court, in view of the greatly expedited trial schedule, would not be able in advance of trial to resolve that motion in Blueshift’s favor. While exact calculations are not reasonably possible, this Court estimates that roughly $50,000 of the time and effort invested in preparing that motion would have been invested anyway to address various legal and factual issues that foreseeably were to arise at trial, so this Court does not believe that the entirely of that $75,000 was billed for unreasonably wasted effort. It will, however, reduce Blueshift’s fee award by $25,000 to reflect that portion of this work which probably was unreasonably wasted effort.
ORDER
For the reasons stated above, after hearing, having considered the fee application and the opposition, and the applicable law, this Court hereby FINDS that the reasonable attorneys fees and costs that Blueshift incurred in prevailing on its Chapter 93A claim total $848,830.50 in attorneys fees and $88,222.25 in costs, for a total of $937,052.75, and ORDERS that the judgment be amended to provide for the award of these attorneys fees and costs.