Sanders, Janet L., J.
This is a class action pursuant to G.L.c. 93A for an allegedly deceptive marketing program conducted in connection with the prescription drug Nexium. Specifically, plaintiffs allege that defendant AstraZeneca Pharmaceuticals, L.P. (Astra-Zeneca) promoted Nexium to Massachusetts consumers and third-party payors by falsely claiming that the drug was superior to AstraZeneca’s own (earlier) drug Prilosec at a time when Prilosec was about to lose patent protection and become available to patients in a cheaper generic form. Filed in 2005, the case was settled just two weeks before the scheduled October 2012 trial date. On February 6, 2013, this Court preliminarily approved the Settlement Agreement, pursuant to which AstraZeneca would allot a total of $20 million to a common fund. The Court was also informed at that time that the plaintiffs’ attorneys expected to ask for fees in an amount not to exceed 30 percent of the common fund, together with expenses and an incentive payment to plaintiffs. That information was included in the notice to class members so that they could lodge any objections.
On July 31,2013, the parties were before this Court on the plaintiffs unopposed Motion for Final Approval of the Settlement Agreement. Only one person'filed an objection to the proposed settlement and the request for fees. After a hearing, this Court approved the settlement and entered an order in the form proposed by the parties. As part of the settlement, this Court also approves attorneys fees in the amount of $6 million together with expenses of $1,043,903.48 and an incentive payment of $15,000 to each of the two plaintiffs. Because the size of the fee award is unprecedented for state court, this Court writes separately to explain why I approved the amount requested.[1]
In support of the plaintiffs motion for attorneys fees, plaintiffs’ counsel has filed an affidavit and exhibits which sets forth the total number of hours expended on the litigation on a per lawyer and per paralegal basis. That total (excluding hours spent preparing the application for attorneys fees) comes to 7,418.87 hours. This Court concludes that this number is reasonable in light of the fact that this case has spanned more than seven years and involved issues of law and of fact which were complex and difficult. Discovery included the taking and defending of more than a dozen depositions and the review of 700,000 pages of documents. The parties also engaged in extensive motion practice, including the litigation of a motion to dismiss, two motions for summary judgment, plaintiffs’ motion for class certification (the allowance of which was appealed), and a defense attempt to exclude two of plaintiffs’ key experts. Finally, counsel had to prepare for trial, since settlement was not reached until shortly before the trial was scheduled to begin.
The affidavit submitted in support of the fee application also sets forth the hourly fee charged by the lawyers who worked on the case. That hourly rate ranges from $180 for an associate to $590 for a senior partner. This Court concludes that these rates are reasonable and are in line with rates charged at medium to large law firms in Boston. It is also consistent with (or lower than) rates that Massachusetts courts have approved for counsel in similar actions. See e.g. Tuli v. Brigham & Women’s Hosp., Inc. 2009 U.S. Dist. LEXIS 129768 at *5-7 (D.Mass. June 8, 2009) (approving rate for partners for Boston partners in the range of $600 to $700); see also Brooks Automation, Inc. v. Blueshift Techs., Inc., 21 Mass. L. Rptr. 53 (Mass.Super.Ct. April 6, 2006) (approving rates ranging between $260 and $625 an hour). Multiplying the hours spent by the hourly rates, the total lodestar amount is $3,036,252.[2]
Counsel asks that this Court apply a multiplier of 2 to that amount for a total award of $6 million—30 percent of the common fund. In support of that request, plaintiffs offer the Declaration of William B. Rubenstein, a tenured professor at Harvard Law School. Professor Rubenstein’s principal area of scholarship is complex civil litigation with an emphasis on class actions. In addition to offering an opinion as to the fairness of the settlement—which he describes as “extraordinary” and a “superb resolution of the class’s claim”—Professor Rubinstein is also of the opinion that the requested fee is warranted, whether based on an approach that awards counsel a percentage of the common fund or on the lodestar method adjusted upward.[3] In particular, Rubenstein sets forth the “qualitative factors” that support the fee request. This Court is persuaded that these additional considerations warrant the multiplier or upward adjustment of the lodestar amount.
The first consideration is the results achieved. The settlement here represents (to this Court’s knowledge) *517 the best outcome of all the Nexium cases filed in the United States. Indeed, AstraZeneca has defeated the plaintiffs in every other case alleging deceptive marketing of Nexium. See e.g. Pennsylvania Employee Benefit Trust Fund v. Zeneca, Inc., 710 F.Sup.2d 458, 465-66 (D.Del.2010); Weiss v. AstraZeneca Pharmaceuticals, 2010 WL 3387220 (Cal.Ct.App. Aug. 30, 2010); Prohias v. AstraZeneca Pharmaceuticals, L.P., 958 So.2d 1054, 1056 (Fla.Dist.Ct.App. 2007), review denied, 969 So.2d 1014 (Fla. 2007); Depriest v. Astra-Zeneca Phamaceuticals, L.P., 351 S.W.3d 168, 170-71 (Ark. 2009). Although less than the optimistic assessment of damages which plaintiffs’ experts would have testified to at trial, the $20 million figure represents twenty times the maximum amount of possible damages estimated by the defendant’s expert. More important, because of the method used to calculate individual payments, those consumers who file full ■ claims (rather than take a flat $25 payment) will likely get at least 100 percent of their damages, those damages being the difference between what they paid for Nexium as opposed to what they would have paid for the generic equivalent. The third-parly payors will also realize a substantial benefit from the settlement. However, the claims procedure is structured so as to favor consumers so that, even after deduction of all attorneys fees and costs, there will almost certainly be enough money in the common fund to pay every consumer claim in full. Finally, although it is extremely unlikely that the fund will have any money left after all valid claims are paid, if there is anything left, that amount will not revert to the defendant but will be distributed as cy pres payments to charities agreed to by the parties with the court’s approval.
The second consideration is the risks counsel undertook in taking this case on a contingency basis. The case was quite expensive, requiring counsel to invest thousands of hours of their own time and to front expenses that exceeded a million dollars. They did so even though victory was far from assured. In devoting so much time to this case, counsel necessarily was precluded from taking on paying work. This investment of time was necessary because the issues were both factually and legally difficult. Moreover, there were no cases on which to “piggy back”: there had been no prior governmental enforcement actions to pave the way and the cases that had been brought against AstraZeneca for its marketing of Nexium had not proceeded as far as the instant one, so that counsel could not simply recycle materials from other litigation. Finally, AstraZeneca’s success elsewhere made an early settlement unlikely. As one commentator put it: “a lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.” Leubdsdorf, The Contingency Factor in Attorneys Fee Awards, 90 Yale L.J. 473, 480 (1980). A multiplier recognizes that the lawyer who does not charge for his services until and unless he recovers for his client has essentially made a loan of his time: where there is a high risk that loan will “default” (i.e. there will be no recovery), the interest rate must be high enough to compensate the lawyer accordingly.
For these reasons and for other reasons articulated in the plaintiffs’ Memorandum of Law (itself a reflection of the high quality of the work plaintiffs counsel performed in this case), the plaintiffs’ Motion for Attorneys Fees and Expenses and for Incentive Awards is ALLOWED.

Although this may be the largest award in state court to date (at least as to reported cases), it may also be the last of its size: Congress has since changed the diversity rules for federal jurisdiction in class actions, with the result that cases like this one are now invariably filed only in federal court.

Mfis is the total using the hourly rates that counsel charged at the time the work was performed. Using their currently hourly rates, the total would be $3,919,307.00.

Massachusetts state courts follow the lodestar approach. The majority of courts, whether state or federal, utilize the percentage method where a common fund is involved, using the lodestar approach, if at all, as a “cross check.” Fitzpatrick, An Empirical Study of Class Actions Settlements and their Fee Awards, 7 J. EMPIRICAL LEGAL STUD., 811, 820 (2010).